In re LYNN MANIS, Asserted to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Lynn Manis, Respondent-Appellant).

Third District No. 3—90—0557

Opinion filed May 21, 1991.

Elizabeth Sircher, of Guardianship and Advocacy Commission, of Chicago, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Jay P. Hoffman, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HAASE delivered the opinion of the court:

The trial court found that the respondent, Lynn Manis, was a person subject to involuntary admission and ordered him hospitalized in a mental health facility (Ill. Rev. Stat. 1989, ch. 91½, par. 3—600). The respondent appeals.

At the commitment hearing, psychiatrist U.N.B. Durai testified that he was the respondent's treating physician. He stated that the respondent suffered from schizophrenia, exhibited delusional behavior, and was uncooperative with the medical staff at the mental health facility. As evidence of the respondent's delusions, Dr. Durai noted that the respondent's father had terminal cancer, but the respondent insisted that his father had contracted a vermin infestation from his granddaughter while changing her diapers. Dr. Durai opined that the respondent was unable to provide for his own basic physical needs so as to guard himself from physical harm. In particular, he noted that the respondent would not take his schizophrenia medication unless instructed to and that he remained in bed all day and had to be reminded to perform every activity of daily living, including eating.

Jim Manis, the respondent's brother, testified that the respondent had been living with his parents for the past nine years. During that time, he had never held a job and had no source of income. Jim noted that the respondent could no longer live with his parents due to his father's cancer and that no other relatives could take him in. He opined that if the respondent were released into an uncontrolled environment, he would be unable to obtain food or shelter. Jim testified that Lynn Manis had previously been treated for schizophrenia approximately 11 years before in New York shortly after withdrawing

from a master's program at the University of Michigan. Jim stated that before the respondent went to live with his parents, Jim and his father had found the respondent living on the streets of New York, eating only cigarettes, sugar, coffee, and occasionally pancakes.

Nurse's aide Cindy Gilson testified that she was caring for the respondent's father in his home. On one occasion, she had seen the respondent hit his father on the feet and say, "Old man, I'm not your son today. I'm a professional worker." That and other incidents led to the respondent's being removed from the house.

The respondent testified that he was 42. He planned to ask an uncle in Tennessee if he could live with him. He did not believe he had a mental illness and would not take any medication if he were released from the facility. He noted that when he was living in New York, he was only on the street for 30 days. He further noted that he was not eating tobacco but was merely placing a little in his mouth in an attempt to quit smoking.

The trial court found that the State had proved by clear and convincing evidence that the respondent should be involuntarily committed. In so finding, it noted that while a person could not be committed merely because he would otherwise live on the street, the State had shown that the respondent was unable to provide for his basic physical needs so as to guard himself from physical harm.

On appeal, the respondent argues that the State failed to show by clear and convincing evidence that he was unable to care for himself so as to guard himself against physical harm.

■ Section 1—119(2) of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1989, ch. 91½, par. 1—119(2)) defines a person subject to involuntary admission as "[a] person who is mentally ill and who because of his illness is unable to provide for his basic physical needs so as to guard himself from serious harm." We note that the need for mental health treatment must be shown by clear and convincing evidence. (*In re Crenshaw* (1978), 62 Ill. App. 3d 260, 378 N.E.2d 1260.) Mere proof of the presence of mental illness is not by itself sufficient to establish that a person needs mental treatment. (*In re Sciara* (1974), 21 Ill. App. 3d 889, 316 N.E.2d 153.) However, the State is not required to prove that the respondent is a definite danger to himself or society. (*In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.) Thus, courts do not have to wait until someone is harmed before ordering the hospitalization of a respondent. *In re Haber* (1979), 78 Ill. App. 3d 1120, 398 N.E.2d 121.

■ In the instant case, the respondent acknowledged that if he were released he would not take his medicine. More important, there

was considerable evidence that his schizophrenia rendered him incapable of providing even the most rudimentary necessities for himself. Although one is certainly free to live on the street, a person who demonstrates that he cannot even feed himself will not be sent out to starve. Based on the evidence presented, we find that the trial court did not manifestly err in concluding that if the respondent were released, there was a reasonable expectation he would be unable to provide for his basic personal needs.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

GORMAN and McCUSKEY, JJ., concur.