*In re* M.A., Alleged to be a Person Subject to Involuntary Psychotropic Medication (The People of the State of Illinois, Petitioner-Appellee, v. M.A., Respondent-Appellant).

First District (3rd Division)   Nos. 1—96—3216, 1—96—3217 cons.

Opinion filed November 12, 1997.—Rehearing denied November 26, 1997.

Ellen Holden Clark, William E. Coffin, and John B. Lower, all of Guardianship and Advocacy Commission, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Robert Ruiz, Arthur M. Samuels, and Sheila L. Sellers, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LEAVITT delivered the opinion of the court:

After a bench trial on August 20, 1996, M.A. was ordered to be involuntarily hospitalized for no more than six months with the Department of Mental Health pursuant to Illinois' Mental Health and Developmental Disabilities Code (the Code). 405 ILCS 5/3—700

(West 1996). After another bench trial on August 22, 1996, M.A. was ordered to involuntarily receive psychotropic medication for a period not to exceed 90 days. 405 ILCS 5/2—107.1 (West 1996). M.A. argues we should reverse the commitment order because (1) the State did not prove by clear and convincing evidence she was reasonably expected to inflict serious physical harm upon herself or another, and (2) hospitalization was not the least restrictive alternative for treatment. M.A. asserts that we should reverse the order for involuntary medication because she was denied her right to a jury trial. Although the issues raised are technically moot, as both orders have expired, they are capable of repetition and yet they evade review. We therefore address them. *Madison Park Bank v. Zagel*, 91 Ill. 2d 231, 235, 437 N.E.2d 638 (1982), citing *August H. Skoglund Co. v. Department of Transportation*, 67 Ill. App. 3d 276, 280, 384 N.E.2d 849 (1978). We affirm the commitment order and reverse the order for involuntary administration of psychotropic medication.

At the trial where the State sought M.A.'s confinement, M.A.'s brother, Dean, and Dr. Kristin Welch testified. Dean said he received a call from M.A.'s landlord on August 10, 1996. He told Dean that M.A. was "disrupting the building." Dean drove to his sister's residence and found her in the hall ironing clothes and blocking the hallway. Dean said M.A.'s small, one-room apartment was "a disaster." He also said that he had previously seen his sister's apartment in good condition.

Dr. Welch said she examined M.A. on August 15, 1996, and had had contact with her during some of M.A.'s 15 previous hospital stays. She opined that M.A. suffered from bipolar disorder, manic with psychotic features, and borderline personality. Dr. Welch testified that M.A. had a manic, elevated, irritable mood. She said M.A. could go from being "pleasant on the unit to very hostile, angry and at times threatening on the unit."

According to Dr. Welch, M.A. made threatening comments to staff members. Specifically, Dr. Welch said M.A. threatened one of the unit nurses, saying the nurse needed to "watch herself [from] now on whenever she walked out of the hospital to the parking lot." Furthermore, Dr. Welch said she personally observed a physical struggle between sheriffs and M.A. in which a sheriff was poked with a needle tucked in M.A.'s waistband.

Finally, Dr. Welch testified that any alternative treatment less restrictive than hospitalization was "absolutely not" appropriate in this case. She opined that M.A. would have great difficulty taking care of herself outside a structured setting.

■ Code section 1—119 defines a person subject to involuntary hospital admission as:

"(1) A person with mental illness and who because of his or her illness is reasonably expected to inflict serious physical harm upon himself or herself or another in the near future; or

(2) A person with mental illness and who because of his or her illness is unable to provide for his [or her] basic physical needs so as to guard himself or herself from serious harm." 405 ILCS 5/1—119 (West 1996).

When seeking to have an individual involuntarily hospitalized, the State must show the need for such confinement by clear and convincing evidence. *In re Manis*, 213 Ill. App. 3d 1075, 1077, 572 N.E.2d 1213 (1991). Mere proof of mental illness is not alone sufficient to establish a person needs treatment. *Manis*, 213 Ill. App. 3d at 1077. However, the State is not required to prove respondent is a definite danger to himself or society. *Manis*, 213 Ill. App. 3d at 1077. Thus, courts do not have to wait until someone is harmed before ordering hospitalization. *Manis*, 213 Ill. App. 3d at 1077. We will not disturb a trial court's conclusion as to whether a respondent should be involuntarily hospitalized unless it is against the manifest weight of the evidence. *Manis*, 213 Ill. App. 3d at 1078.

■ Dr. Welch was the only expert who testified and one of only two witnesses called. Because of Dr. Welch's testimony regarding M.A.'s mental illness and concomitant instability, which she said caused M.A. to threaten others and be a potential danger to herself and society, we cannot say the court's order requiring M.A.'s hospitalization was against the manifest weight of the evidence.

As to M.A.'s claim that hospitalization was not the least restrictive treatment option, the only evidence involving possible alternative treatments came from Dr. Welch, who said no alternative to hospitalization was viable in this case. Based on that, we also cannot say that the court's determination that hospitalization was the least restrictive alternative for M.A. was against the manifest weight of the evidence. For these reasons, we affirm the court's August 20, 1996, order.

■ M.A. further claims she was wrongly denied her right to a jury trial at the August 22, 1996, proceeding which resulted in an order for involuntary administration of psychotropic drugs. We review this legal issue under the *de novo* standard. *People v. Ravellette*, 263 Ill. App. 3d 906, 911, 636 N.E.2d 105 (1994).

At that proceeding, before any witness was called, the assistant public defender stipulated to Dr. Welch's expert qualifications. M.A., who had legal training, interrupted to say Dr. Welch was not her attending psychiatrist and that she would not "stipulate to her being an expert." Nevertheless, the court, having heard from her in the previous proceeding, accepted Dr. Welch as an expert.

As the public defender continued to advise the court of additional stipulations, M.A. interrupted repeatedly and inappropriately and was generally disruptive. The judge finally told M.A. she could say only the word "objection," and that if he did not understand an objection, he would ask her to elaborate. Shortly thereafter, the public defender stated, "We'll waive trial by jury." Immediately afterward, M.A. said, "[O]bjection." Ignoring the objection, the judge said, "Okay. We'll proceed. Thank you." M.A. received a bench trial.

The Code's chapter 3, in article 8, sets forth the procedures that apply in section 2—107.1 hearings like the one here. 405 ILCS 5/2—107.1(C) (West 1996). Section 3—802 states a respondent in civil commitment proceedings "is entitled to a jury." 405 ILCS 5/3—802 (West 1996). This is unlike Illinois' Code of Civil Procedure, which requires a plaintiff to file a written jury demand. 735 ILCS 5/2—1105 (West 1996).

Although judicial proceedings held pursuant to the Code are generally conducted in accordance with Illinois' Code of Civil Procedure, the Code takes precedence when the two are inconsistent. *In re Dryjanski*, 282 Ill. App. 3d 161, 164, 668 N.E.2d 616 (1996). Insofar as the Code of Civil Procedure requires plaintiffs to file a written jury demand before trial, it is inconsistent with the Code, and, in this case, the Code controls. *Dryjanski*, 282 Ill. App. 3d at 164.

Statutes that govern one's right to a jury trial, including the Code's section 3—802, should be liberally construed in favor of granting the right, both as to form and timeliness. *In re Williams*, 151 Ill. App. 3d 911, 919, 503 N.E.2d 816 (1987). We have previously interpreted section 3—802 of the Code to mean no written jury demand is required in civil commitment proceedings. *Dryjanski*, 282 Ill. App. 3d at 164. We have further held that an oral jury demand is appropriate and timely if made at the beginning of the proceeding. *Dryjanski*, 282 Ill. App. 3d at 165.

In *Dryjanski*, the State sought the respondent's involuntary hospitalization. When the respondent's case was called, her attorney identified himself for the record as did the State's attorney. The respondent's attorney next asked for a one-week continuance. The court denied the motion. Immediately thereafter, respondent's counsel requested a jury trial. In denying the jury request, the judge said, "[y]our request for a jury trial was not made on a timely basis; we have already commenced the hearing." *Dryjanski*, 282 Ill. App. 3d at 163. We reversed, holding the hearing had not commenced where "neither party had made an opening argument, and the first witness had not been called or duly sworn." *Dryjanski*, 282 Ill. App. 3d at 164.

We find *Dryjanski* apposite to the case *sub judice*. Like the respondent there, M.A. manifested a desire for a jury trial. She did so in a timely fashion, before any witness was called and before opening argument commenced. The State argues that because M.A. was disruptive, commenting on or objecting to virtually everything that was said, the judge properly recognized loquacity as a symptom of M.A.'s mania and ignored her objection as one made by a mentally disturbed individual. At oral argument, the State suggested that M.A.'s was not a "serious" objection, and it was therefore permissible for the court to disregard it. We disagree.

First, there is no presumption in such a proceeding that a respondent is unfit or unable to comprehend the proceeding and articulate herself. If the judge here believed M.A. had difficulty understanding what was happening or was unfit to participate, it would have been appropriate for him to appoint a guardian *ad litem*, not ignore her objection. Here, no one ever suggested a guardian *ad litem* be appointed. Hence, we are left to assume that no one felt M.A. was unfit to meaningfully participate in the proceeding.

Alternatively, the judge could have avoided the error that occurred here by simply asking M.A., a former licensed attorney, some questions instead of dismissing her objection. For example, did she know what a jury was? Did she understand she had a right to a jury? Did she mean by her objection that she desired a jury of her peers to decide whether she should be forced to ingest unwanted psychotropic medication?

We consider the entitlement to a jury trial granted in section 3—802 of the Code too important to be summarily disregarded as it was here. 405 ILCS 5/3—802 (West 1996). Although M.A. did not explicitly request a jury, when her attorney purported to announce her intent to waive a jury, she objected. At this point, the public defender was no longer announcing M.A.'s decision to waive a jury, and that decision was manifestly hers to make. This cannot be considered an effective waiver. See *People v. Anderson*, 266 Ill. App. 3d 947, 956, 641 N.E.2d 591 (1994) (holding waiver is operative only when effected by the respondent herself). Because M.A. was entitled to a jury trial but was denied one without ever having waived that right, we reverse the August 22, 1996, order for involuntary administration of psychotropic drugs.

Affirmed in part and reversed in part.

COUSINS, P.J., and CAHILL, J., concur.