THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. PAUL GERICH, Respondent-Appellant.

(No. 59584; ▮)

First District (4th Division)—August 28, 1974.

Paul Bradley and Lynn Sara Frackman, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and William F. Linkul, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

On February 16, 1972, Paul Gerich was found to be a "person in need of mental treatment" at a hearing before the Honorable Robert J. Dempsey sitting without a jury. The court ordered that respondent be kept for treatment at Chicago State Hospital. He was released on an absolute discharge February 29, 1972, but urges in this appeal that the order be vacated and expunged from his records.

The issues presented for our review are:

    1. Whether the evidence supported the court's finding that respondent was a person in need of mental treatment; and

    2. Whether the procedures used to obtain respondent's hospitalization complied with the requirements of the Illinois Mental Health Code. Ill. Rev. Stat. 1971, ch. 91½.

On February 9, 1972, a petition for hospitalization was filed in the circuit court of Cook County by Joan S. Frenz, alleging that respondent was a "person in need of mental treatment" as defined in section 1—11 of the Mental Health Code. (Ill. Rev. Stat. 1971, ch. 91½.) The petition

stated: (1) the nearest known relative of respondent was his brother, John Gerich, of 3719 South 57th Avenue, Chicago; (2) respondent was presently in the custody of the circuit court at the House of Correction; (3) the facts supporting the allegation that respondent was in need of mental treatment could be proved by the certificate of Dr. Eugene Stern, a physician at 1121 South State Street, Chicago, who had personal knowledge of the case; and (4) this was an emergency case in that respondent was likely to physically harm himself or others if not hospitalized immediately.

The petition stated no other factual basis for the opinion. However, attached to the petition was a certificate of need for hospitalization filed by Eugene Stern, M.D., stating that he examined respondent on February 9, 1972, and found:

> "Patient to be virtually totally deaf and unable to verbalize in an intelligible manner. Patient was interviewed by written notes and his response showed confusion and his replies were quite irrelevant. He admits to past care at Kankakee State. There is disorientation as to time and place. He admits to recent and past alcoholic excess. Judgment is poor. He notes that he has no funds. He appears bewildered and perplexed. He is presently unable to care for himself. Diagnosis: Organic Brain Syndrome associated with alcoholic deterioration."

The certificate concluded with Dr. Stern's opinion that respondent was in need of mental treatment and should be admitted to a hospital immediately as an emergency for the protection from physical harm to himself and others.

Respondent was admitted to the Chicago-Read Mental Health Center on February 9, 1972, pursuant to the emergency admission provisions of the Mental Health Code. (Ill. Rev. Stat. 1971, ch. 91½, § 7—1.) On February 10, 1972, he was examined by Dr. Emillio Jomarron, who filed a Certificate of Need for Hospitalization which stated the following findings:

> "Confused, disoriented as to time and place. Almost incoherent. Remarkable [sic] impaired intellect. Confabulatory. History of Alcoholism. [Diagnosis:] C.B.S. and alcoholism."

On February 16, 1972, a hearing was held on the petition before the Honorable Robert J. Dempsey. Respondent was represented by the Cook County public defender. His counsel stated to the court that respondent had a hearing problem which made consultation difficult and that their only communication had been by written notes.

A social worker testified that he had been in contact with John Gerich, respondent's brother, who was unable to testify because of his own ill

health but had given background information concerning respondent. According to the social worker, John Gerich stated that he was neither willing nor able to care for respondent at his home. The social worker further testified that respondent had only a second-grade education, his "main problem" was old age and difficulty in communicating with others, he was able to write but in a very confused manner, and he had claimed to have been living with his brother but the brother denied that he had.

Dr. Emillio Jomarron testified regarding his examination of respondent as follows:

"The patient is confused, disoriented as to time and place, almost incoherent. He was manifesting almost impaired intellect and at times appeared to be somewhat unconfabulatory [sic]. He had some history of alcoholism and diagnosis was chronic brain syndrome with alcoholism and he appeared not to be able to take care of himself."

Respondent was able to identify himself to the court and stated that his father and son were of the same name as he. He told the court that he was 50 years old and had worked at all kinds of jobs. Although some of his responses demonstrated rational thought processes, respondent made references to his "boss," "Radaboy," his attempt to locate or help a policeman, and the White House as his place of birth.

At the conclusion of the hearing, the court entered a finding that respondent was a person in need of mental treatment to be kept for treatment at Chicago State Hospital (Chicago-Read Mental Health Center). On February 29, 1972, respondent was released from the hospital on an absolute discharge.

The first issue respondent raises in this appeal is that the evidence produced at the hearing failed to substantiate the court's finding that he was a "person in need of mental treatment." He urges us to apply the standard of reasonable doubt but argues that the evidence was insufficient even under a lesser standard. Instead of showing that he was in need of mental treatment, respondent contends, the evidence merely portrayed him as "a somewhat confused, old, deaf man who could not support himself and who was unwanted by his family."

The People insist that the evidence was sufficient to find respondent in need of mental treatment on the ground that he could reasonably be expected to unintentionally harm himself or that he was unable to care for himself.

The Mental Health Code defines a "person in need of mental treatment" as:

"* * * [A]ny person afflicted with mental illness, not including a person who is mentally retarded, as defined in this

Act, if that person, as a result of such mental illness, is reasonably expected at the time the determination is being made or within a reasonable time thereafter to intentionally or unintentionally physically injure himself or other persons, or is unable to care for himself so as to guard himself from physical injury or to provide for his own physical needs. This term does not include a person whose mental processes have merely been weakened or impaired by reason of advanced years." Ill. Rev. Stat. 1971, ch. 91½, § 1—11.

We note that the statutory definition specifically excludes the mentally retarded and those who are enfeebled by old age. However, in our opinion, there was sufficient evidence to support the trial court's finding on the ground that respondent was unable to care for himself.

The evidence showed that respondent was examined by two psychiatrists, both of whom diagnosed his condition as chronic brain syndrome. The American Psychiatric Association (Committee on Public Information, 1964), defines this disorder as follows:

"An organic psychiatric disorder characterized by impairment of orientation, memory, intellectual functions and judgment, together with emotional instability   *   *   *."

Both of the psychiatrists who examined the respondent specifically found that he was unable to care for himself. Moreover, there was testimony that respondent's only known relative was unable to care for him. Finally, respondent's own responses during the hearing indicated some distortion which could reasonably lead the court to conclude that he was confused, disoriented and would have difficulty caring for his own needs.

■■ In view of the foregoing, we hold that the evidence was sufficient to support the court's finding that respondent fell within the statutory definition of a person in need of mental treatment on the ground that he was unable to care for himself at the time of the hearing.

Secondly, respondent contends that the procedures employed to obtain his commitment failed to satisfy the requirements of the Code. He argues that the procedural deficiencies were three-fold: (1) the petition did not set forth sufficient information and adequate notice of the particular charges against him; (2) respondent was not advised of, and therefore did not waive, his right to a jury trial; and (3) he was not afforded effective assistance of counsel.

With respect to the sufficiency of the petition, respondent contends that it was fatally defective because it provided neither the reason why immediate hospitalization was necessary nor witnesses who could prove the facts asserted therein. He argues that the failure to provide the names of witnesses was prejudicial in that it was the basis for his emergency

detention from February 9, 1972, to February 16, 1972, and, further, precluded him the opportunity of preparing his defense for the February 16, 1972, hearing.

■■ In our opinion, the petition should be considered in its entirety. We will not reverse on account of minor deviations in form which cause no prejudice to the respondent. After careful consideration, we find that the petition, when read in its entirety, substantially complied with the statutory requirements.

The petition alleged that an emergency existed in that respondent was likely to physically harm himself or others if not immediately hospitalized. It further stated that the facts supporting the allegation that respondent needed mental treatment could be proved by the certificate of Dr. Eugene Stern. Dr. Stern's certificate, which was attached to the petition, stated that respondent was confused, disoriented as to time and place, exhibited poor judgment, appeared bewildered and perplexed. These facts, in our opinion, supported the conclusion that emergency hospitalization was necessary so that respondent would not harm himself. Thus, we find that the petition and the certificate, when read together, substantially complied with the statutory requirements for emergency admission. Ill. Rev. Stat. 1971, ch. 91½, § 7—1.

■■ Further, we disagree with respondent's contention that he was prejudiced by the failure to list the names of witnesses. Although the space specifically provided for listing the names of witnesses was left blank, the identity of the witness was disclosed elsewhere in the same petition. It alleged that the facts supporting the assertion that respondent was in need of mental treatment could be proved by the certificate of Dr. Eugene Stern, a physician who had personal knowledge of the case. Therefore, we find that respondent was not prejudiced by the failure to list in the designated space the names of witnesses to the facts asserted where the identity of the witness was disclosed elsewhere on the face of the petition.

The second procedural deficiency raised by the respondent is that he was not advised of, and therefore did not knowingly waive, his right to a jury trial. As authority for his argument, respondent cites *Boykin v. Alabama* (1969), 395 U.S. 238, 23 L.Ed.2d 274, 89 S.Ct. 1709. We do not believe *Boykin* is controlling here inasmuch as it applied to persons charged with criminal offenses. Moreover, in *People ex rel. Keith v. Keith* (1967), 38 Ill.2d 405, 231 N.E.2d 387, the Supreme Court of Illinois specifically held that the constitution of Illinois does not require a jury trial in a proceeding to commit for mental treatment.

■■ Further, we find no support for respondent's contention in the applicable statute. It provides:

"The patient, his spouse, any relative or friend, or an attorney appearing for any of them, may demand that the question of need for mental treatment or need of treatment for mental retardation be heard by jury. The jury shall consist of 6 persons to be chosen in the same manner as are jurors in other civil proceedings." (Ill. Rev. Stat. 1971, ch. 91½, § 9—2).

In our opinion, the statute only grants the right to a jury trial if one is requested. Neither the respondent nor his attorney demanded a jury trial in the instant case. Therefore, we find no violation of the statute in this regard.

Finally, respondent urges us to reverse on the ground that he was not afforded effective assistance of counsel. He contends that appointed counsel inadequately represented him in that he did not cross-examine the State's witnesses, provided the court with little substantive information about his client, and failed to act as his client's advocate.

As we have indicated, respondent had severe communication problems. His only communication with others was by written notes and a pattern of speech that was largely disorganized and unintelligible. The social worker testified regarding several attempts to communicate with respondent by written notes which displayed the same disorganized style and content that was evident in his oral communication. His counsel advised the court that respondent had a hearing problem which made consultation difficult and that their only communication had been by written notes.

It is apparent that counsel was confronted with an extremely difficult task owing to his client's inability to communicate. Counsel's ability to obtain a clear picture of respondent's predicament was limited. In view of these circumstances, we think that the public defender did as much as could reasonably be expected. Therefore, we hold that respondent was afforded effective assistance of counsel in view of the limitations that existed.

Because of the foregoing, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ADESKO, P. J., and BURMAN, J., concur.