*In re* MARILYNN SCHUMAKER, Alleged to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Marilynn Schumaker, Respondent-Appellant).

Second District    No. 2—93—0814

Opinion filed April 26, 1994.

724

William E. Coffin and Laurel Whitehouse Spahn, both of Guardianship & Advocacy Commission, of Chicago, for appellant.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers, Robert J. Biderman, and Leslie Hairston, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Following a bench trial in the circuit court of Kane County, respondent, Marilynn Schumaker, was found to be a person subject to involuntary admission (405 ILCS 5/3—700, 3—811, 3—812 (West 1992)) and ordered hospitalized with the Department of Mental Health. Respondent brought a timely appeal from the judgment of the circuit court raising three issues: (1) whether the State failed to prove by clear and convincing evidence that she was reasonably to be expected to inflict serious physical harm upon herself or another in the near future; (2) whether the State failed to prove by clear and convincing evidence that she was unable to provide for her basic physical needs so as to guard herself from serious harm; and (3) whether the trial court's order for involuntary admission was the least restrictive treatment alternative.

The following testimony was adduced at trial. Ludovice Barber, a social worker with the Kilbourne Unit at Elgin Mental Health Center (Kilbourne), related a conversation she had with respondent on the morning of June 23, 1993. At the time, respondent was confined at Kilbourne. Respondent told Barber that she wanted to go to court and be discharged. According to Barber, respondent claimed someone was trying to murder her husband and herself, and respondent also said "that if she wasn't *** discharged within five days that she would try and kill someone." Barber described respondent's demeanor as very angry, loud, and somewhat hostile. Barber admitted that respondent never threatened her personally, nor did she ever threaten to kill anyone in particular. When asked if Barber believed respondent, Barber said, "I had no reason to doubt her."

Dr. Garth D. Smith, a psychiatrist, was examined as an expert witness without objection. Smith testified that he conducted a psychiatric examination of respondent on June 23, 1993. This exam consisted of an interview with respondent, contact with the staff at Kilbourne, and a review of respondent's chart. Based upon this information, Smith diagnosed respondent as having a long history of bipolar affective disorder with many hospitalizations. He testified that she continued to show signs of that illness even though it was currently in a "mild form." Smith stated that bipolar affective disorder was a mental illness characterized by (1) periods of either depression, during which time the patient is very unhappy, cannot enjoy anything, and has trouble sleeping and functioning as a result thereof; or (2) periods of mania, during which there is no unhappiness at all, the patient feels great, has thoughts that are free and flowing, can do anything, and tends to be quite uninhibited. Smith stated that persons suffering from this mental illness "are quite irritable and frustrated and can be quite angry and sometimes destructive."

When asked about the specific symptoms of respondent, Smith stated, "She shows a mild form of manic behavior with an elevated mood." Respondent told Smith that she used to have a manic-depressive illness, but she outgrew it and did not believe she had it any longer. Smith stated that this perception was fairly characteristic of respondent's illness. Smith further testified:

"When problems occur or frustrations or difficulties occur, she very promptly attributes them to somebody else.

She tends to have paranoid thinking, blaming other people for doing bad things to her.

It's different from a schizophrenic or delusional disorder because she's not terrible [sic] disturbed or persistent in these paranoid thoughts but if she's unhappy, it's somebody else's fault and she tends to pass it off and be almost casual about it."

Smith testified that, in his opinion, "because of her mental illness and because of the features of her illness, [respondent's] judgment is quite impaired." He added that she was in need of hospitalization because only the structure and control provided by such a facility would "keep her from exercising bad judgment detrimental to herself or other people." Concerning respondent's impaired judgment, Smith stated that while she would be able to buy food and knew how to prepare it, she would not be able to obtain a job and maintain support for herself. Smith also opined that her ability to manage money was questionable. Smith stated that with appropriate treatment respondent's condition and thinking would be improved in 30 days.

Respondent testified that on April 1, 1993, she was "kidnapped" by her psychiatrist and another woman and brought to Kilbourne. She admitted having claimed that her former husband was trying to murder her, but she stated that she meant it "figuratively" because she felt that her former husband had precipitated her confinement. Respondent also admitted saying she would kill someone if she was not released in five days, but she stated that she made the comment after being provoked by the staff at Kilbourne. Respondent testified that she also told Barber she was joking and would not murder anyone. Respondent admitted to placing several prank calls to police while she was at Kilbourne, stating that she wanted them to come, arrest her, and remove her from the facility. Respondent testified that she had previously refused to take her medication because it had made her sick.

The trial court found that there was clear, convincing, and un-contradicted evidence demonstrating that respondent suffered from a mild form of the mental illness, bipolar affective disorder. The court further found "that the evidence is clear and convincing that as a

result of mental illness, the Respondent is a person reasonably expected to inflict serious physical harm upon herself or another in her future."

In making its determination, the trial court stated that it had relied upon the testimony of Barber and Smith. The trial court also noted that respondent had "testified in a very angry, loud, hostile manner." The trial court further found that respondent was not capable of providing for her basic physical needs as a result of her mental illness. The trial court concluded that respondent was a person subject to involuntary admission and that Kilbourne was the least restrictive environment for her treatment.

No challenge is raised in this appeal to the trial court's finding that respondent suffered from a mild form of mental illness. Instead, respondent argues that the order of involuntary commitment must be reversed because clear and convincing evidence was not introduced to support the trial court's findings that she was reasonably to be expected to inflict serious physical harm upon herself or another in the near future and that she was unable to provide for her basic physical needs so as to guard herself from serious harm.

■ It is well established that involuntary admission procedures implicate substantial liberty interests of the person, but these liberty interests must be balanced against the need to provide care for persons unable to care for themselves and to protect society from the dangerously mentally ill. (*In re Robinson* (1992), 151 Ill. 2d 126, 130-31; *In re Winters* (1994), 255 Ill. App. 3d 605, 608.) "A person may not be confined against her will merely because she is mentally ill if she is 'dangerous to no one and can live safely in freedom.' " (*Winters*, 255 Ill. App. 3d at 609, quoting *O'Conner v. Donaldson* (1975), 422 U.S. 563, 575, 45 L. Ed. 2d 396, 407, 95 S. Ct. 2486, 2493.) The State has the burden of showing the need for confinement, in accordance with these principles and sections 1—119 and 3—808 of the Mental Health and Developmental Disabilities Code (405 ILCS 5/1—119, 3—808 (West 1992)), by clear and convincing evidence, and a reviewing court may not disturb the trial court's decision unless it is against the manifest weight of the evidence. *Winters*, 255 Ill. App. 3d at 608-09; *In re Long* (1992), 237 Ill. App. 3d 105, 109-10; *In re Houlihan* (1992), 231 Ill. App. 3d 677, 682-83.

■ First, we address the trial court's finding that respondent was reasonably to be expected to inflict serious physical harm to herself or another in the near future as a result of her mental illness. (405 ILCS 5/1—119(1) (West 1992).) To meet its burden of proof, the State must submit "explicit medical testimony" that the respondent can be reasonably expected to be a serious danger to herself or others as a

result of her mental illness. (*In re Cutsinger* (1989), 186 Ill. App. 3d 219, 223; *In re Cochran* (1985), 139 Ill. App. 3d 198, 200.) The expert's opinion in this regard must also be supported by evidence that the patient intends to harm herself or another. *Houlihan*, 231 Ill. App. 3d at 684; *Cutsinger*, 186 Ill. App. 3d at 226.

In *Cutsinger*, a physician opined that a patient, who was loud, angry, used abusive language, threatened to call politicians, and advanced towards people when he became angry, was dangerous. The reviewing court determined that there were insufficient facts to support the physician's opinion because, although the patient's behavior was offensive, the patient had not physically threatened or harmed anyone, or even made gestures to harm anyone. *Cutsinger*, 186 Ill. App. 3d at 226; see also *Houlihan*, 231 Ill. App. 3d at 684.

We determine that insufficient evidence was presented to support the trial court's finding that respondent was reasonably expected to cause serious physical harm to herself or others in the near future because of her mental illness. Smith was never asked to render an opinion on this matter, and his testimony indicated only that respondent's judgment was impaired. Also, although Smith did state that persons suffering from respondent's form of mental illness might become "quite angry or somewhat destructive," he also noted that respondent suffered from a "mild" form of the illness. Smith never testified that he believed respondent would act in a violent or hostile manner, but merely that she might exercise bad judgment possibly to the detriment of herself and others. Smith's testimony was devoid of any reference to the threat respondent made in the presence of Barber, including, for example, his opinion on whether respondent was likely to take any actions consistent with the threat as a result of her mental illness. Because of the substantial rights involved in an involuntary admission, an order of commitment must be supported by *explicit* medical testimony regarding the need for confinement. (See *Cutsinger*, 186 Ill. App. 3d at 223; *Cochran*, 139 Ill. App. 3d at 200.) Smith offered no opinion, explicit or otherwise, that respondent posed a serious physical danger to herself or others as a result of her mental illness.

In addition to Smith's failure to offer an explicit medical opinion to support the trial court's finding, a sufficient factual basis was not adduced at trial which could have supported such an opinion. Smith provided no testimony indicating he was aware of any incidents of violence or threats being made by respondent, including the incident involving Barber. As pointed out in respondent's brief, respondent might well be characterized, particularly based upon her conduct at trial, as "a very disagreeable and verbally abusive person." Based

upon the principles set forth in *Houlihan* and *Cutsinger*, this alone would not provide a sufficient factual basis to support an opinion that respondent posed a serious physical danger to herself or others as a result of her mental illness. We must conclude, therefore, that the trial court's finding that respondent was reasonably to be expected to inflict serious physical harm upon herself or another in the near future because of her mental illness was against the manifest weight of the evidence.

As an alternative basis for supporting its order of involuntary admission, the trial court found that respondent was unable to provide for her basic physical needs so as to guard herself from serious harm as a result of her mental illness. (405 ILCS 5/1—119(2) (West 1992).) The State had the burden of proving this basis by clear and convincing evidence. (405 ILCS 5/3—808 (West 1992); *Long*, 237 Ill. App. 3d at 109.) When questioned directly about respondent's abilities in this regard, Smith opined merely that respondent's judgment would be impaired. When pressed for an explanation concerning the likely results of respondent's impaired judgment, Smith opined that she would be able to buy and prepare food but would have problems with maintaining employment and making financial decisions. Smith's expert testimony constituted the only evidence supporting the trial court's finding on this issue.

■ The weight to be assigned an expert's opinion depends on the factual basis for that opinion. (*Winters*, 255 Ill. App. 3d at 609; *Treadwell v. Downey* (1991), 209 Ill. App. 3d 999, 1003.) Thus, an expert's opinion is only as valid as the reasons for it. (*Winters*, 255 Ill. App. 3d at 609; *In re B.W.* (1991), 216 Ill. App. 3d 410, 414.) In *Long*, we noted:

"Generally, the inability to care for oneself so as to guard against physical harm is found when the illness substantially impairs one's 'thought process[es], perception of reality, emotional stability, judgment, behavior, or ability to cope with life's ordinary demands.' [Citations.] In a person suffering from the manic phase of bipolar disorder, this inability to care for oneself usually manifests itself by a failure to eat or sleep, to obtain proper medical care and by excessive activity to the point of exhaustion. [Citation.]
       ***
       *** [A] person is free to live on the street, if the person chooses to do so. [Citation.] A person may not be held against her will merely to improve her standard of living or because society may find it uncomfortable to see such people on the street. [Citation.] However, if the person is incapable of feeding herself, she 'will not be sent out to starve.' [Citation.]" *Long*, 237 Ill. App. 3d at 110.

■ Nothing in the record indicates that respondent would not eat

properly or obtain an appropriate amount of sleep due to her mental illness. In fact, Smith explicitly testified that respondent was capable of shopping and preparing food. The testimony that respondent was incapable of maintaining employment and possibly incapable of handling financial matters does not support an order for commitment. Although these factors are appropriate for the trial court's consideration, the decision to confine an individual through involuntary commitment should not be based solely upon the speculative harm that might result from a person's inability to secure employment and balance a checkbook.

■ Although some testimony was provided concerning respondent's refusal to take medication, the record does not indicate the kind of medication respondent refused to take or what the medical consequences of the refusal entailed. The right to refuse psychotropic medication, for example, is guaranteed statutorily (405 ILCS 5/2—107 (West 1992)) and such refusal is not a ground for involuntary admission (*Winters*, 255 Ill. App. 3d at 609-10; *People v. Nunn* (1982), 108 Ill. App. 3d 169, 174). The testimony regarding respondent's refusal to take medication, therefore, was too vague to provide a basis to support the trial court's finding. We determine, therefore, that the trial court's finding, that respondent was unable to provide for her basic physical needs because of her mental illness, was against the manifest weight of the evidence.

For the foregoing reasons, the trial court's order of involuntary admission must be reversed. We need not, therefore, reach respondent's final argument regarding the least restrictive treatment alternative.

The judgment of the circuit court is reversed.

Reversed.

INGLIS, P.J., and BOWMAN, J., concur.