FOURTH DIVISION

May 25, 2000

No.  1-98-4532 )

) 

In re
 BERT W., ) 
Appeal from the Circuit

Alleged to be a Person Subject to )   Court of Cook County

Involuntary Admission (THE PEOPLE )

OF THE STATE OF ILLINOIS, ) 

Petitioner-Appellee; BERT W.,   
) 

Respondent-Appellant). ) No. 98 CONMT2854

)

)

) 

) Honorable

) James F. Henry,

) Judge Presiding.

) 

) 

JUSTICE HALL delivered the opinion of the court:
 

I. BACKGROUND

This case involves a petition that alleges Bert W. (respondent) to be a person subject to involuntary admission for mental health treatment.  
On November 20, 1998, respondent was involuntarily admitted to Chicago Read Mental Health Center.  On December 2, 1998, 12 days after respondent’s admission, a commitment hearing was held.  
Following a bench trial, the circuit court ordered that respondent be hospitalized at Chicago Read Mental Health Center.  Respondent appeals from an order 
finding him subject to involuntary hospitalization.  On appeal, respondent contends that: (1) the circuit court abused its discretion by granting the State's motion for a continuance; (2) the State failed to prove, by clear and convincing evidence, that respondent was reasonably expected to inflict serious physical harm upon another person; (3) the circuit court erred by 
allowing a witness whose name did not appear on the petition for involuntary admission to testify; and (4) the circuit court erred by denying respondent his constitutional and statutory right to treatment in the least restrictive alternative setting.  For the following reasons, we affirm.  The relevant facts are as follows.

In 1998, Samuel Guardino was a case manager with the Thresholds program; he was also respondent’s caseworker.  Thresholds provides special services for the homeless.  Thresholds provided services for respondent including certain money management services such as payment of rent and allocation of grocery expenses.  Respondent never received psychiatric care from Thresholds.  Prior to his commitment, respondent was placed at the New Jackson Hotel, as a resident.  Respondent received an allotment for groceries in the amount of $20 per week.  Guardino or one of several other caseworkers drove respondent to the grocery store weekly. 

On August 31, 1998, while standing in the checkout line at Aldi’s Foods, respondent became very "fidgety [and] nervous looking."  Respondent slammed his groceries onto the conveyor belt.  Guardino told respondent that the cost for respondent’s groceries exceeded the $20 that he was allowed to spend.  After checking out, respondent realized that he had exceeded his limit.  Respondent said, in a loud voice, "I can handle this," and returned the grocery items to the cashier until his groceries totaled $20.  According to Guardino, four similar “grocery store” incidents occurred during the nine weeks between August 31, 1998, and November 2, 1998.  After each incident, respondent would yell at the caseworkers and frequently slammed the car door upon exiting the vehicle.  Because of respondent’s conduct, Thresholds management decided to buy groceries for respondent and deliver the groceries to his room at the New Jackson Hotel.

Guardino testified that on November 16, 1998, Guardino purchased groceries and delivered them to respondent.  Respondent answered the door and said, "I need to talk to you, I want you to come in here."  Because respondent was speaking loudly, Guardino did not enter the apartment.  Guardino feared that respondent might hit him.  Guardino said, "I am not going to go into your room.  I can't go into your room.  Come out in the hallway and we will talk."  Respondent walked into the hallway and said, "You are not to deliver my groceries anymore."  Respondent told Guardino that he was capable of grocery shopping for himself.  Respondent told Guardino that the caseworker who had shopped for his groceries the week before did not buy enough groceries for respondent to eat.  Respondent was standing close to Guardino, yelling, and “thrusting” his index finger at Guardino's face. 

Guardino said "Bert, we can't take you to the grocery store, you get too angry in the grocery store and we are going to have to bring you the food."  Respondent continued to yell and, with a clenched fist, said that if anyone brought him food next week, he would "kick their ass" or "something similar to that."  Respondent continued yelling, "[d]on't you dare bring me groceries next week, don't you dare bring me groceries next week.”  Guardino attempted to leave.  Respondent stood so that Guardino was unable to pass him.  When respondent changed his position, Guardino was able to move away and he walked toward the exit.  As Guardino exited the building, he could hear respondent pursuing him down the hallway and yelling, “Don’t you dare, don’t you dare, don’t you dare bring groceries to me.  I will kick your ass.”  Because of respondent’s conduct on November 16, 1998, members of Thresholds management decided that respondent should undergo psychiatric evaluation.  On November 19, 1998, Guardino, along with another Thresholds caseworker and the police, went to respondent’s residence.  Respondent was transported to Mt. Sinai Hospital.  On November 20, 1998, respondent was transferred to Chicago Read Mental Health Center.   

Dr. Palacio was respondent’s treating psychiatrist upon his arrival at Chicago Read.  Respondent’s psychological evaluation began on November 23, 1998.  Palacio examined respondent three times during the period of November 23, 1998, through December 2, 1998, received input from the treatment team and observed respondent in the hospital unit.  Palacio's  primary diagnosis of respondent was bipolar disorder with psychotic features.  Palacio noted that respondent’s symptoms included paranoid delusions, loud speaking, irritable moods, flight of ideas, talking to himself when alone, poor judgment and poor insight. 

Palacio believed that respondent was reasonably expected to inflict serious physical harm upon others in the future.  Palacio noted that respondent has been very “loud” and “argumentative” in the hospital unit, his speech is “to the point where he is yelling” and he points his finger when he talks.  Palacio stated that respondent’s argumentative behavior and loudness has been disruptive to the people in the unit.  Palacio explained that because of respondent’s moodiness and irritability he is always angry and talks very loudly to the point where he gets “verbally aggressive.”  Because of respondent’s intense moods, Palacio believed that if respondent were released from the hospital, he “would get into altercations with other people and may become physically aggressive.”  Palacio said that, although respondent was not on suicide watch and no measures were in place to prevent respondent’s aggressive behavior during his stay at Chicago Read, respondent could be physically dangerous to other people.  Palacio also noted that despite a positive evaluation of respondent (stating that respondent had good cognition, comprehension and good insight into his diagnosis of bipolar disorder), respondent’s conversations changed depending on what kind of mood he was in.  Palacio stated that a less restrictive alternative to hospitalization would be inappropriate because of respondent’s potential harm to others.  Accordingly, Palacio recommended that respondent remain hospitalized and be medicated for his mental disease. 

Gwendolyn Lee, a witness for respondent, stated that she was respondent’s social worker at Chicago Read and found placement in the community for individuals with mental disabilities.  Lee testified that defendant was to be discharged on December 21, 1998.  Lee noted that, because of respondent’s anger management problem, if he was not medicated a discharge date of December 21 was not probable.  The circuit court found respondent subject to involuntary admission and that no less restrictive alternative treatment,  other than hospitalization in a psychiatric facility, was available.  This appeal followed.

II. ANALYSIS

A. Motion for Continuance

Defendant first contends that the circuit court abused its discretion by granting the State a continuance in order to complete respondent's psychological testing.  Pursuant to section 3-800(b) of the Mental Health and Developmental Disabilities Code (Mental Health Code (405 ILCS 5/3-800(b) (West 1996)) a respondent may be detained pending further court order for up to 15 days.  Section 3-800(b) in relevant part states: 

"(b) If the court grants a continuance on its own motion or upon the motion of one of the parties, the respondent may continue to be detained pending further order of the court. Such continuance shall not extend beyond 15 days except to the extent that continuances are requested by the respondent."  405 ILCS 5/3-800(b) (West 1996).

Whether a continuance is granted or denied depends upon the particular facts and circumstances surrounding the request.  
People v. Davis
, 147 Ill. App. 3d 800, 802-03, 498 N.E.2d 633 (1986).  A decisive factor in determining the propriety of the circuit court’s discretion in ruling on a motion for continuance is whether the party requesting the continuance has shown a lack of due diligence in proceeding with the cause.  
Curtin v. Ogborn
, 75 Ill. App. 3d 549, 553, 394 N.E.2d 593 (1979).  The grant or denial of a motion for a continuance is within the sound discretion of the circuit court.  
People v. Gosier
, 145 Ill. 2d 127, 156, 57, 582 N.E.2d 89 (1991); 
People v. Collins
, 106 Ill. 2d 237, 478 N.E.2d 267 (1985). 

On November 20, 1998, respondent was hospitalized in response to an order finding him subject to involuntary admission to a mental health facility.  On November 24, 1998, the circuit court granted the State’s motion for a one-day continuance, until November 25, 1998.  On November 25, 1998, the State requested a one-week continuance until December 2, 1998, in order to complete respondent’s psychological examination.  Respondent objected.  The circuit court noted that respondent displayed violent and threatening behavior toward his caseworker and “attempted to set fire to garbage in his apartment; therefore, a thorough mental evaluation was necessary.  The circuit court granted the State’s motion for a continuance, finding that such a motion was appropriate where the State needed additional time to determine whether it was safe to discharge respondent.  On December 2, 1998, the circuit court commenced respondent’s hearing.  Respondent was detained for a total of 12 days prior to receiving a hearing.  We find that the circuit court did not abuse its discretion in granting the State’s motion for a continuance where such continuance did not violate the 15-day period allowable under section 3-800(b).

 

B. Infliction of Serious Harm

Respondent contends that the State failed to prove by "clear and convincing" evidence that he was reasonably expected to inflict serious physical harm upon another person and therefore he should not have been subject to involuntary commitment.  A circuit court’s finding that the respondent is subject to involuntary admission must be established by clear and convincing evidence.  
Bazydlo v. Volant
, 164 Ill. 2d 207, 647 N.E.2d 273 (1995); 
People v. Barichello
, 305 Ill. App. 3d 13, 711 N.E.2d 406 (1999).  A person is subject to involuntary commitment when the evidence is clear and convincing that: (1) he suffers from a mental disease or defect which (2) makes it reasonably possible he will inflict serious physical harm on himself or another.  
In re Moore
, 292 Ill. App. 3d 1069, 1071, 686 N.E.2d 641 (1997); 
In re Clark,
 246 Ill. App. 3d 362, 370, 615 N.E.2d 1244 (1993); 405 ILCS 5/1-119 (West 1996).  The circuit court is not required to wait until an individual is harmed by the respondent before ordering hospitalization.  
In re Knapp
, 231 Ill. App. 3d 917, 920, 596 N.E.2d 1171 (1992).  

To meet its burden of proof, the State must submit “explicit medical testimony” that the respondent is reasonably expected to be a serious danger to himself or others as a result of his mental illness. 
Bazydlo
, 164 Ill. 2d at 213; 
In re Schumaker
, 260 Ill. App. 3d 723, 727-28, 633 N.E.2d 169 (1994).  For a medical opinion to be considered as clear and convincing evidence of mental illness, it is sufficient if the expert indicates the basis of her diagnosis by having directly observed the patient on several occasions.  
In re Tuman
, 268 Ill. App. 3d 106, 644 N.E.2d 56 (1994).  A circuit court’s finding that a person is subject to involuntary admission will not be reversed unless it is against the manifest weight of the evidence.  
Barichello
, 305 Ill. App. 3d 13. 

     In the instant case, the State proved through the testimony of Palacio, respondent’s treating physician, that respondent suffers from bipolar disorder with psychotic features and is, thus, mentally ill.  The State also proved through Palacio’s testimony that, because of respondent’s mental disease it is reasonably possible that respondent will inflict serious physical harm on himself or another. Specifically, at the commitment hearing, Palacio testified that, because of respondent’s moodiness and irritability he is “always angry and talks very loudly to the point where he gets verbally aggressive.”  Palacio believed that if respondent were released from the hospital he “would get into altercations with other people and may become physically aggressive.”  Palacio explained that respondent, therefore, could be physically dangerous to other persons.  

According to Palacio, she observed respondent on three occasions prior to the commitment hearing while he was in the psychiatric unit at Chicago Read.  Palacio described respondent as “loud," “argumentative," and “disruptive."  Palacio noted that while respondent was at Chicago Read he “pointed his finger in her face and spoke loudly “ and “got into a heated verbal argument with a patient in the unit and had to be seated in another area.”  We also note that respondent was initially admitted to the psychiatric unit of Chicago Read because he threatened bodily harm to his caseworker over a minor incident that cannot be characterized as provocative.  We also note that there is some evidence in the record that respondent may have set fire to garbage in his apartment, thereby endangering himself and other residents of the New Jackson Hotel.

     Respondent’s reliance on 
In re Schumaker
, 260 Ill. App. 3d 723, 633 N.E.2d 169 (1994) and 
In re Cutsinger
, 186 Ill. App. 3d 219, 542 N.E.2d 414 (1989), is misplaced.  In 
Schumaker
, the medical expert never gave explicit testimony that the respondent was reasonably expected to harm herself or others.  Here, Palacio, respondent’s treating psychiatrist, explicitly states that without in-patient treatment respondent is reasonably expected to inflict physical harm on another.  In 
Cutsinger
, the medical expert had not actually witnessed the incidents upon which his diagnosis was based and misinterpreted the statements of those who had seen the respondent’s behavior.  Here, Palacio witnessed respondent’s “loud," “argumentative” and “disruptive” conduct.  Additionally, Palacio clearly understood that respondent had physically threatened his caseworker and was, as a result, admitted to Chicago Read for psychiatric evaluation.  Consequently, 
Schumaker
 and 
Cutsinger
 are inapplicable to this case.  We find that the circuit court’s determination that respondent was reasonably expected to inflict serious physical harm upon another was not against the manifest weight of the evidence. 

C. Witness Testimony

Defendant contends that the circuit court abused its discretion by allowing a witness to testify whose name did not appear on the petition for involuntary admission.  Defendant specifically contends that respondent’s caseworker, Sam Guardino,  should not have been allowed to testify because the petition for involuntary admission did not list Guardino as a witness.  The State contends that the circuit court did not abuse its discretion in allowing Guardino to testify because the circuit court gave respondent the opportunity to both prepare for Guardino’s testimony and thoroughly cross-examine Guardino.

Pursuant to section 3-601(b) of the Mental Health Code, a petition for involuntary admission to a mental health facility must include certain information.  Section 3-601(b)(4) requires that pertinent information regarding witnesses to give testimony at the involuntary admission hearing be included as part of the petition.  Section 3-601(b)(4) provides in relevant part:

“(b) The petition shall include:

(4) the names, addresses and phone numbers of the            witnesses by which the facts asserted may be proved.”          405 ILCS 5/3-601 (b)(4) (1996). 

A fundamental requirement of due process is notice reasonably calculated to inform interested parties of the pending action and afford them an opportunity to raise their objections.  
People v. Sansone
, 18 Ill. App. 3d 315, 324, 309 N.E.2d 733 (1974).  It is statutorily incumbent upon the State in a civil commitment proceeding to provide the names of witnesses who may prove the facts asserted in the petition.  
Sansone
, 18 Ill. App. 3d 315.  However, failure to list the names of witnesses, who could prove facts asserted in the petition in the space specifically provided for listing of such names is not necessarily fatally defective where the identity of such witnesses is disclosed elsewhere on the face of the petition.  
People v. Gerich
, 22 Ill. App. 3d 575, 317 N.E.2d 724 (1974).  A petition for commitment should be considered in its entirety.  
Gerich
, 22 Ill. App. 3d at 580.  A reviewing court will not reverse on account of minor deviations in form which cause no prejudice to the respondent.  
Gerich
, 22 Ill. App. 3d 575; 
In re Crenshaw
, 62 Ill. App. 3d 260, 378 N.E.2d 1260 (1978). 

     Here, respondent contends that the procedures employed to secure his commitment failed to satisfy the requirements of section 3-601(b)(4) of the Mental Health Code.  He argues that the petition did not set forth sufficient information because it failed to provide the name of a witness, Guardino.  He argues that the failure to provide Guardino's name, as a witness,  was prejudicial in that Guardino's testimony was the basis for his emergency detention on November 20, 1998.  

Guardino's name was not listed on the petition in the space specifically provided for witness names.  The petition simply indicates that the primary basis for respondent's involuntary committal was respondent's behavior toward his caseworker on November 16, 1998.  Specifically, the petition states: "Patient was brought to [the] hospital ER by the CPD for displaying violent and threatening behavior towards [his] caseworker and [for a] possible fire setting in his apartment building."  It is alleged that facts supporting the assertion that respondent was in need of mental treatment could be proved by his caseworker, Guardino, the person with whom respondent was hostile and belligerent on November 16, 1998.  

Respondent argues that the term "caseworker" lacked specificity and did not notify him that Guardino was the caseworker who would be testifying.  We note that several Thresholds case managers provided groceries for respondent on a weekly basis.  Therefore, on November 16, 1998, respondent could have been "violent" with any one of the case mangers who grocery shopped for him, including Guardino.  The petition does not specify that Guardino was involved in the November 16, 1998, incident.  However, through due diligence, Guardino could have been identified as the "caseworker" in question and as a key witness who would give testimony regarding the facts alleged in the petition. 

As previously mentioned, section 3-601(b)(4) requires that the petition list the names of witnesses who may prove the facts asserted in the petition.  This provision should have been complied with to provide respondent with the procedural safeguards intended by the legislature.  It was statutorily incumbent upon the State to list the names of all witnesses.  However, upon review of the totality of the circumstances, we do not view the State's failure to list Guardino's name as a fatal defect in the petition, because respondent has not shown how he was unduly prejudiced by the State's omission.  Respondent objected to Guardino's testimony.  The circuit court allowed respondent an opportunity to prepare for Guardino's cross-examination.  The circuit court stated:

"We will recess and give them [respondent] an opportunity to prepare for whatever testimony might be necessary.  If you need more time than today, I will be happy to continue this matter until Friday [tomorrow] morning for you to have an opportunity to prepare for your trial."

 

Respondent declined the offer of additional time and did not wish to continue the proceeding until the following morning.  Instead,  respondent opted for a short recess (38 minutes) during which respondent's attorney interviewed Guardino.  Respondent took only 38 minutes to prepare for Guardino's testimony.  After Guardino's testimony on direct examination, respondent cross-

examined him.  See 
People v. Sansone
, 18 Ill. App. 3d 315, 309 N.E.2d 733 (1974) (finding that the respondent was not unduly prejudiced by the failure to include the name of a witness on the petition based on the totality of the circumstances).

Moreover, it is within the circuit court's discretion to determine whether a particular witness will be allowed to testify in a mental health proceeding.  It is also the circuit court that determines whether a party will suffer prejudice as a result of allowing a witness not listed on the petition for involuntary admission to testify.  Further, it is settled that w
here a respondent is found by "clear and convincing" evidence to be a person in need of mental treatment, that finding will not be reversed solely because of an improper petition.  
In re Crenshaw
, 62 Ill. App. 3d 260, 378 N.E.2d 1260 (1978).  We find that the circuit court did not abuse its discretion in allowing respondent's caseworker, Guardino, to testify.      

D. Least Restrictive Alternative Setting

Respondent contends that his constitutional and statutory right to treatment in the least restrictive alternative setting was denied. Specifically, respondent contends that he has a constitutional right to refuse hospitalization and that his right can be lawfully infringed only by the least restrictive means available.

An individual has a significant due process liberty interest in refusing involuntary hospitalization.  
Schumaker
, 260 Ill. App.3d 723; 
In re Barbara H.
, 288 Ill. App. 3d 360, 680 N.E.2d 345 (1997).  There is a statutory preference for treatment other than hospitalization.  
In re Luttrell
, 261 Ill.  App. 3d 221, 633 N.E.2d 74 (1994).  A circuit court must order placement of a person subject to involuntary admission in the least restrictive placement alternative.  
Luttrell
, 261 Ill. App. 3d 221.  A treating psychiatrist’s testimony that, if a patient were placed in a less restricted setting, it is reasonable to expect that he would inflict harm on himself or others is sufficient evidence to support a finding that hospitalization is the least restrictive treatment alternative.  
In re Wingo
, 253 Ill. App. 3d 440, 625 N.E.2d 422 (1993).  As a reviewing court, we give great deference to the circuit court's factual findings because the circuit court stands in the best position to weigh the credibility of all the witnesses.

In re Jones
, 285 Ill. App. 3d 8, 673 N.E.2d 703 (1996).  Therefore, we will reverse the circuit court's determination only if we find it to be manifestly erroneous.  
Jones
, 285 Ill. App. 3d 8; 
In re Floyd
, 274 Ill. App. 3d 855, 655 N.E.2d 10 (1995); 
In re Schaap
, 274 Ill. App. 3d 497, 654 N.E.2d 1084 (1995).

In the instant case, Palacio testified that, because of respondent’s intense moods, if he were released from the hospital, respondent “would get into altercations with other people and may become physically aggressive.”  Palacio explained that respondent could be physically dangerous to other people (like he had been in the past with his caseworker, Guardino, threatening physical harm).  Palacio also stated that a less restrictive alternative to hospitalization would be inappropriate because of respondent’s potential to harm others.  Palacio recommended that respondent remain hospitalized and be medicated to treat his mental disease.  See 
In re Long
, 233 Ill. App. 3d 334, 341-42, 599 N.E.2d 90 (1992) (holding that a  medical expert’s testimony that hospitalization was the least restrictive treatment alternative sufficiently demonstrated that there was no alternative treatment to hospitalization).  
Further, respondent’s witness Gwendolyn Lee (respondent’s case manager at Chicago Read) noted that, if respondent were not medicated, he would not be able to effectively deal with his anger and hostility.  Lee also admitted that without medication it was not likely that respondent would be discharged from Chicago Read.  We find that the circuit court’s determination that hospitalization was the least restrictive alternative suitable  for respondent was warranted by the evidence.  In sum, given the evidence, we hold that the circuit court's determination  of involuntary admission was not against the manifest weight of the evidence. 

Accordingly, the judgment of the circuit court of Cook County

is affirmed.

Affirmed.

HOFFMAN, P.J., and SOUTH, J., concur.