NO. 4-06-0045     Filed: 11/20/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: SHARON L.N., a Person Found | ) | Appeal from |
| Subject to Involuntary Admission, | ) | Circuit Court of |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Sangamon County |
|      Petitioner-Appellee, | ) | No. 05MH653 |
|      v. | ) | |
| SHARON L.N., | ) | Honorable |
|      Respondent-Appellant. | ) | Leslie J. Graves, |
| | ) | Judge Presiding. |

_____

JUSTICE COOK delivered the opinion of the court:

Following a December 23, 2005, hearing, the trial court ordered respondent, Sharon L.N., to involuntary admission at McFarland Mental Health Center (McFarland) for a period not to exceed 90 days (405 ILCS 5/1-119 (West 2004)). Respondent appeals, arguing that (1) no clear and convincing evidence warranted involuntary admission, particularly the State's expert testimony failed to satisfy section 3-807 (405 ILCS 5/3-807 (West 2004)), and (2) procedural deficiencies violated sections 3-601 and 3-701 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3-601, 3-701 (West 2004)). We reverse due to the State's failure to satisfy section 3-807. We note this court recently reached a different result, on somewhat different facts, in In re Shirley M., No. 4-06-0263 (November 20, 2006), ___ Ill. App. 3d ___, ___ N.E.2d ___.

I. BACKGROUND

On December 6, 2005, Litchfield police chief B.J. Wilkinson filed a petition in Montgomery County (Montgomery petition) for the involuntary commitment of respondent. Wilkinson alleged in the Montgomery petition that neighbors had seen respondent setting fire to trash in her apartment, respondent's apartment was littered with trash and feces, and respondent had been drinking her own urine. Apparently, Wilkinson testified to those same facts. Following hearing on that same day, the court entered an order for temporary detention and examination.

Respondent was subsequently examined by two doctors at McFarland Mental Health Center in Sangamon County, each of whom certified that respondent was mentally ill and reasonably expected to inflict serious physical harm on herself or another in the near future and was unable to safely provide for her basic physical needs. The medical certificates reported that (1) respondent had a long history of mental illness and numerous psychiatric hospitalizations; (2) respondent was delusional and psychotic; (3) neighbors had seen respondent setting fire to trash in her apartment; (4) police observed respondent's apartment littered with trash and feces, and respondent was drinking her own urine; and (5) respondent displayed poor judgment in that she believed she had "cured" herself of diabetes and had discontinued her medication. A third doctor, Dr. Jamie Myers, at-

tempted to examine respondent but respondent refused to speak with him.  Myers nevertheless certified that respondent was mentally ill and was reasonably expected to cause harm to herself or others.

On December 7, 2005, a second petition was filed in Sangamon County (Sangamon petition).  The Sangamon petition is at issue in this case.  The Sangamon petition was merely an uncertified copy of the first petition, absent Wilkinson's factual allegations that had been attached to the Montgomery petition.  Also filed with the Sangamon petition were the Montgomery order for temporary detention and examination and the medical certificates of the two doctors who were able to examine respondent as described above.  The remaining medical certificate, authored by Dr. Myers, was filed on December 9, 2005.  Doctors performed the comprehensive physical, psychiatric, and social investigation from December 6 through December 8, 2005.  The accompanying forms (hereinafter medical reports) were presented at hearing on December 23, 2005.

At hearing, Dr. Myers testified that he was a member of respondent's treatment team.  Respondent refused to talk with Dr. Myers during this particular period of hospitalization.  However, Dr. Myers based his testimony on his work with respondent during a prior hospitalization in September and October 2005 and a review of respondent's current medical records.  Dr. Myers

- 3 -

diagnosed respondent as having schizoaffective disorder, which he categorized as a chronic condition. Dr. Myers testified that, according to the reports, respondent exhibited some behavioral problems while at McFarland in that she threw pencils at a peer and, on another occasion, physically threatened a peer and tried taking the peer's lunch tray. Respondent has also exhibited angry, delusional, and paranoid verbalizations. While Dr. Myers would not classify respondent as suicidal, she had stopped taking her medication. Dr. Myers opined that respondent was a danger to herself and would most likely revert to her preadmission state were she to be released early. Dr. Myers thought that McFarland was the least-restrictive environment for respondent's treatment and recommended a treatment plan of 90 days. The recommended treatment plan was entered into evidence along with the medical reports. There was no cross-examination.

Respondent, under the representation of counsel, then testified on her own behalf. Respondent denied speaking with Dr. Myers during her current stay at McFarland, denied purposefully setting a fire in her home, denied drinking her own urine, and denied threatening anyone. Respondent believed herself to be mentally ill and admitted that she sometimes "forgot" to take her medication. Respondent stated that she feels better when she takes her medication and that she has been taking her medication every day at McFarland. Respondent stated that she would con-

tinue her treatment were she to be released and that members of her church would help keep her on track.

The trial court found that respondent was mentally ill and was currently receiving the least-restrictive treatment available. The court stated that respondent needed more time to stabilize on her medication before she could handle outpatient treatment and entered an order of involuntary admission at McFarland for a period not to exceed 90 days. This appeal followed.

## II. ANALYSIS

### A. Overview

Respondent makes two arguments on appeal: (1) that no clear and convincing evidence warranted her involuntary admission and (2) that the State failed to comply with sections 3-601 and 3-701 of the Code. We are bound by the Illinois Supreme Court's decision in In re Michelle J., 209 Ill. 2d 428, 808 N.E.2d 987 (2004), to reverse the order for involuntary admission where the State failed to satisfy the provisions of section 3-807. Section 3-807 states that "[n]o respondent may be found subject to involuntary admission unless at least one psychiatrist, clinical social worker, or clinical psychologist who has examined [the respondent] testifies in person at the hearing." (Emphasis added.) 405 ILCS 5/3-807 (West 2004).

### B. Section 3-807

A judgment ordering involuntary commitment cannot be affirmed in the absence of testimony that complies with section 3-807. Michelle J., 209 Ill. 2d at 438, 808 N.E.2d at 992-93. In Michelle J., the supreme court held that the involuntary admission of Sam S. could not be sustained because the requirements of section 3-807 were not satisfied. The testifying psychologist was not able to examine Sam S. personally because he was restrained and not in a position to be interviewed when her schedule allowed. "It was not because he was incapable of being interviewed prior to the hearing." Michelle J., 209 Ill. 2d at 436, 808 N.E.2d at 991. In fact, three other workers were able to examine Sam S. prior to the hearing. They were apparently not called because of administrative convenience; the testifying psychologist worked in the county where the hearing was held, the others did not. "Under these circumstances, there is no legitimate basis for deviating from section 3-807's explicit requirements." Michelle J., 209 Ill. 2d at 436, 808 N.E.2d at 991.

Michelle J.'s case involved different circumstances. The testifying psychologist was unable to interview Michelle the day before the hearing because Michelle did not appear capable of making "'an informed decision on whether or not to waive her rights.'" Michelle J., 209 Ill. 2d at 433, 808 N.E.2d at 989. "Unlike the expert in Sam's case, however, [the testifying psychologist] was directly involved in the respondent's care."

Michelle J., 209 Ill. 2d at 439, 808 N.E.2d at 993. She served as a consultant to Michelle's treatment team and was able to meet with Michelle personally in a group session, apparently within 72 hours of the hearing. Accordingly, the supreme court could not say the requirements of section 3-807 were not satisfied. Michelle J., 209 Ill. 2d at 439, 808 N.E.2d at 993.

As to Sam S., the supreme court refused to read its previous decision, in Barbara H., "to permit recognition of an exception to the personal examination requirement based on the expert's inability to conduct a personal interview." Michelle J., 209 Ill. 2d at 436, 808 N.E.2d at 991. The court also noted that in any event, such an exception would be inapplicable to Sam S.'s situation. Sam S. was capable of being interviewed prior to the hearing. Michelle J., 209 Ill. 2d at 436, 808 N.E.2d at 991. Although not detailed in Barbara H., the reason the expert there was unable to conduct a personal interview was that the respondent refused to talk to the expert. Michelle J., 209 Ill. 2d at 435, 808 N.E.2d at 991. Justice Thomas, specially concurring, questioned the holding in Barbara H.: "Is the majority holding that a respondent can avoid involuntary commitment simply by refusing to speak with the doctor assigned to examine him or her?" Michelle J., 209 Ill. 2d at 441, 808 N.E.2d at 994 (Thomas, J., specially concurring). Justice Thomas also noted that the testifying doctor in Barbara H. had personally treated

the respondent for six months. Justice Thomas questioned the majority's reliance on the fact that Michelle J.'s personal interview occurred within 72 hours of the hearing: "[H]ow can we write a 72-hour time limit into the statute?" Michelle J., 209 Ill. 2d at 442, 808 N.E.2d at 995 (Thomas, J., specially concurring).

It is not clear what the rule would be if the respondent simply refused to speak with the doctor assigned to examine him or her. That situation was not presented in Michelle J., where Sam S. was not incapable of being interviewed prior to the hearing, and workers who had personally interviewed Sam S. prior to the hearing were not called purely because of "administrative convenience." Nor was refusal to speak the focus of Barbara H., where that fact was not even mentioned in the opinion. It seems likely that in a case where the respondent simply refused to speak to the testifying worker, the court would follow Justice Thomas's special concurrence.

The Fifth District recently addressed a situation wherein the respondent simply refused to speak to the testifying worker in In re David B., No. 5-05-0416 (September 6, 2006), ___ Ill. App. 3d ___, ___ N.E.2d ___,. There, the court held that section 3-807 could not be used as a loophole for a sexually dangerous and legally sophisticated party to exploit. David B., No. 5-05-0416, slip op. at 14, ___ Ill. App. 3d at ___, ___

N.E.2d at ___. Review of the respondent's confinement had come before the Fifth District on at least 28 prior occasions, allowing the respondent to gain some degree of familiarity and sophistication with the system. David B., No. 5-05-0416, slip op. at 3, ___ Ill. App. 3d at ___, ___ N.E.2d at ___. In fact, the respondent in David B. told the testifying worker that the reason he refused to speak with her was because "she would testify at the next hearing." David B., No. 5-05-0416, slip op. at 7, ___ Ill. App. 3d at ___, ___ N.E.2d at ___. The Fifth District concluded that "section 3-807 of the Code requires the examiner to attempt a personal interview but that if the respondent refuses or is intentionally uncooperative, then the statutory examination may be based on discussions with treating staff and a review of medical records." David B., No. 5-05-0416, slip op. at 14, ___ Ill. App. 3d at ___, ___ N.E.2d at ___. The holding in David B. may be appropriate under the facts of that case. However, the holding in David B. does not seem to apply to a situation where the State could have called an expert who had personally examined the respondent in strict compliance with the statute but instead called a witness with whom the respondent had refused to speak.

Here, Dr. Myers was a part of respondent's treatment team and attempted to interview respondent on one occasion but respondent refused. Dr. Myers worked with respondent in group

- 9 -

therapy during her <u>prior</u> hospitalization.  The expert here had some familiarity with respondent and her condition, but he did not personally examine respondent in connection with her current episode.  Dr. Myers was not aware of whether respondent was currently participating in group therapy and seemed to rely mainly on respondent's hospital records in his testimony regarding respondent's current condition.  Like the first respondent in <u>Michelle J.</u>, two other certified professionals were able to personally examine respondent in connection with the current episode and the State offered no explanation as to why it chose to rely on Dr. Myers instead.  See <u>Michelle J.</u>, 209 Ill. 2d at 436, 808 N.E.2d at 991.

We reverse the order of involuntary admission.  While our decision concerning section 3-807 is dispositive of this case, we address respondent's remaining claims.

### C. Clear and Convincing Evidence

Had Dr. Myers' testimony satisfied section 3-807, the State's evidence would have met the clear and convincing standard.  The trial court's decision is entitled to great deference and, provided it is not against the manifest weight of the evidence, will not be set aside, even if the reviewing court, after applying the clear and convincing standard, would have ruled differently.  <u>In re Moore</u>, 301 Ill. App. 3d 759, 764, 704 N.E.2d 442, 445 (1998).

Respondent admits that she is mentally ill.  The question before this court is whether the State proved by clear and convincing evidence that, due to the illness, respondent was reasonably expected to inflict serious harm upon herself or another in the near future or was unable to provide for her basic physical needs.  405 ILCS 5/1-119 (West 2004).

Respondent cites numerous cases for the proposition that mental illness alone is insufficient to warrant involuntary admission and that evidence that a respondent is reasonably likely to harm herself or another must be supported by explicit medical evidence.  See, for example, In re Schumaker, 260 Ill. App. 3d 723, 727-28, 633 N.E.2d 169, 172-73 (1994); In re Winters, 255 Ill. App. 3d 605, 608-10, 627 N.E.2d 410, 413-14 (1994).  Likewise, evidence of a respondent's potential to cause harm absent evidence of respondent's actual engagement or attempted engagement in harmful activities is insufficient to warrant involuntary admission.  In re Rovelstad, 281 Ill. App. 3d 956, 667 N.E.2d 720 (1996) (evidence insufficient where voices told patient to run around naked, stop eating and sleeping, and to commit suicide, but where patient never actually engaged or attempted to engage in such activities).  However, that is not the situation we are dealing with here.  The State is required to prove that respondent is a definite danger to herself or society but is not required to wait until someone is actually harmed

before hospitalization is warranted. <u>In re Manis</u>, 213 Ill. App. 3d 1075, 1077, 572 N.E.2d 1213, 1214 (1991).

In the case at bar, the State presented evidence through Dr. Myers' testimony and through medical reports that respondent had already engaged in dangerous conduct. Neighbors reported that respondent set fire to trash in her apartment. Respondent did not deny that she had started a fire but merely denied purposefully starting the fire. Respondent stated that "maybe" she had been careless with the cigarette and that had caused a comforter to catch fire. The State presented evidence that respondent had threatened other patients, that her home was littered with trash and feces, and that she drank her own urine. Though respondent offered a benign characterization of the first two accusations and flat-out denied the third, the court was not required to see matters in the same light.

Respondent also testified that she had stopped taking her medication following her last release from McFarland just two months prior to this current episode. Respondent exercised poor judgment in that she believed that she "cured herself" of diabetes and no longer took medication for that disease. Respondent admitted that she had a habit of forgetting to take her medication related to her mental illness and that she often forgets "the time, the days, and the time sometimes." Respondent stated that she had been taking her medication while at McFarland and

- 12 -

that this helps her "very much." Dr. Myers testified that respondent would most likely revert back to her preadmission state if she were to be released early. Despite respondent's testimony that she would continue to take her medication upon release and that members of her church had promised to provide support, the court's order was not against the manifest weight of the evidence where expert testimony indicated that respondent required further inpatient treatment to stabilize her condition. See In re Rogers, 133 Ill. App. 3d 524, 531, 478 N.E.2d 1198, 1203 (1985) (Fourth District).

D. Sections 3-601 and 3-701

Respondent argues that procedural deficiencies in the Sangamon petition violated sections 3-601 and 3-701 of the Code. Sections 3-701(a) and 3-601(b) provide:

"Any person 18 years of age or older may execute a petition asserting that another person is subject to involuntary admission. The petition shall be prepared pursuant to paragraph (b) of section 3-601 and shall be filed with the court in the county where the respondent resides or is present." 405 ILCS 5/3-701(a) (West 2004).

"The petition shall include all of the following:

- 13 -

1. A detailed statement of the reason for the assertion that the respondent is subject to involuntary admission, including *** a description of any acts, [or significant threats] supporting the assertion and the time and place of their occurrence[;]

* * *

4. The names, addresses[,] and phone numbers of the witnesses by which the facts asserted may be proved." 405 ILCS 5/3-601(b) (West 2004).

Respondent argues that the Sangamon petition was not in compliance with the Code because the Sangamon petition was merely an uncertified copy of the Montgomery petition. No motion to transfer venue had been filed. The Sangamon petition did not attach the factual allegations required pursuant to section 3-601(b)(1) that had been attached to the Montgomery petition. Apparently, these "missing" factual allegations include (1) a statement by Wilkinson that a neighbor had seen respondent setting fire to trash in her apartment, respondent's apartment was littered with trash and feces, and respondent was drinking

- 14 -

her own urine; and (2) a report or evaluation by the Montgomery County health department.

We recognize those cases that hold that the procedural safeguards of the Code are not mere technicalities but are the essential tools to protect the respondent's liberty interests and should therefore be strictly construed in favor of the respondent. In re George O., 314 Ill. App. 3d 1044, 1046, 734 N.E.2d 13, 15-16 (2000), citing Rolvestad, 281 Ill. App. 3d at 964-65, 667 N.E.2d at 725; see also In re Demir, 322 Ill. App. 3d 989, 751 N.E.2d 616 (2001); In re Elkow, 167 Ill. App. 3d 187, 521 N.E.2d 290 (1988). However, we note that the cases cited by respondent seem to imply that strict adherence to the Code trumps consideration of society's dual interest in protecting itself from dangerous individuals and caring for those who are unable to care for themselves. See Demir, 322 Ill. App. 3d at 992, 751 N.E.2d at 618 (general statement of society's interests). We also note that these case are in some ways distinguishable. The majority of respondent's cases involved either (1) "total disregard" for procedural rules (In re O.C., 338 Ill. App. 3d 292, 788 N.E.2d 1163 (2003) (Fourth District)) or (2) violation of section 3-610, which explicitly calls for respondent's release upon noncompliance (see 405 ILCS 5/3-610 (West 2004); George O., 314 Ill. App. 3d 1044, 734 N.E.2d 13; In re Ellis, 284 Ill. App. 3d 691, 672 N.E.2d 893 (1996); Rovelstad, 281 Ill. App. 3d 956, 667

N.E.2d 720; People v. Valentine, 201 Ill. App. 3d 10, 558 N.E.2d 807 (1990)).

The State argues that respondent has waived this argument by failing to object at the hearing and that respondent suffered no prejudice from any alleged error. In re Nau, 153 Ill. 2d 406, 419, 607 N.E.2d 134, 140 (1992). For the reasons that follow, we do not find respondent was prejudiced by any alleged error.

Procedural deviations from the Code do not warrant the reversal of an involuntary-commitment order if the defects could and should have been objected to immediately, could have been easily cured if immediately objected to, and made no difference anyway. Nau, 153 Ill. 2d at 419, 607 N.E.2d at 140 (regarding State's failure to strictly comply with notice requirement, section 3-611).

In this vein, we note that the Sangamon petition did provide the names and contact information of two witnesses capable of attesting to the factual allegations (see 405 ILCS 5/3-603(b)(4) (West 2004)). The December 6, 2005, order for temporary detention and examination, which was contained in the Sangamon petition, stated that it relied on the facts alleged in the petition and Wilkinson's testimony in Montgomery County. As per Nau, respondent could have immediately objected to State's failure to attach Wilkinson's statement of factual allegations,

thereby correcting the situation.  Nau, 153 Ill. 2d at 419, 607 N.E.2d at 140.  Regardless, the information contained in the factual allegations was substantively presented in the petition through the medical certificates that were filed with the petition.  See In re Bert W., 313 Ill. App. 3d 788, 796, 730 N.E.2d 591, 598 (2000), citing People v. Gerich, 22 Ill. App. 3d 575, 317 N.E.2d 724 (1974) (holding petition should be read in its entirety and in conjunction with the medical certificates and that reversal is not warranted due to minor deviations in form that do not prejudice respondent).  Additionally, the court heard these same allegations through Dr. Myers' testimony and through the medical reports.  Respondent was familiar with the allegations through the Montgomery hearing and had adequate notice to testify on her own behalf in the presence of her attorney regarding the alleged reasons for her commitment.  The alleged procedural errors were harmless here.

III. CONCLUSION

For the aforementioned reason, we reverse the trial court's order.

Reversed.

TURNER, P.J., and STEIGMANN, J., concur.