26 July 2000

No. 3–99–0279

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 1999

In re
 GEORGE O., ) Appeal from the Circuit Court

Asserted to be a Person Subject   ) for the 10th Judicial Circuit

to Involuntary Admission ) Peoria County, Illinois

)

(The People of the State of )

Illinois, )

)

Petitioner-Appellee, ) No. 99–MH–51

)

) 

)

George O., ) Honorable

) Richard Grawey

Respondent-Appellant). ) Presiding Judge

JUSTICE KOEHLER delivered the opinion of the court:

The respondent, George O., appeals from the Peoria County circuit court's final order that he was subject to involuntary admission and ordering him hospitalized in the Zeller Mental Health Institute for 30 days.  This court must decide the following question: Does the State's failure to establish that it strictly complied with the Mental Health and Developmental Disabilities Code's (405 ILCS 5/1–100 
et seq
. (West 1994)) mandatory involuntary admission procedural safeguards warrant a reversal?  Because we conclude that the State's noncompliance with the statutorily prescribed involuntary commitment procedures renders the circuit court's judgment erroneous, we reverse.

FACTS

On February 23, 1999, respondent George O.'s sister executed a petition for his emergency involuntary admission (the petition) pursuant to section 3–601 of the Mental Health and Developmental Disabilities Code (the Code)(405 ILCS 5/3–601 (West 1992)).  At 1:50 a.m. on February 24, Robert Johnston, M.D., executed a certificate pursuant to section 3–602 (405 ILCS 5/3–602 (West 1992)), but he failed to name George O. on the certificate.  At 4 a.m., the Illinois Valley Community Hospital admitted George O.  In this first certificate, Dr. Johnson stated that the unnamed individual was mentally ill and reasonably expected to inflict serious physical harm on himself or another and unable to care for his basic needs, but he did not indicate that the individual was in need of immediate hospitalization and subject to involuntary admission.  Later that day, the hospital timely filed the petition in La Salle County circuit court.  At 2:15 p.m. that day, D. Hinshaw, M.D., examined George O. and executed a second certificate.  

On February 25, George O.'s cause was transferred to Peoria County circuit court, where the petition and the two above-

mentioned medical certificates were filed at 3:24 p.m.  Athena Guzman, M.D., filed a third medical certificate on February 26 at 11 a.m., reflecting her examination of George O. that occurred at 2 p.m. on February 25, in Peoria at Zeller Mental Health Institute (Zeller).  The Peoria County circuit court appointed counsel for George O.  After a March 3 hearing, during which George O. and Dr. Jayalakshmi Attaluri, George's treating psychiatrist at Zeller, testified, the circuit court concluded that the State proved by clear and convincing evidence that George O. had a serious mental illness and that it could reasonably be expected that, if George O. were discharged, he would inflict serious harm to himself in the near future.  Consequently, the circuit court found George O. subject to involuntary admission and ordered him hospitalized in the Department of Mental Health and Developmental Disabilities for 30 days.  George O. appeals.

ANALYSIS

At the outset, we note that our standard of review is 
de novo
, as the issue before this court involves a question of law.  
People v. Carlson
, 185 Ill. 2d 546, 551, 708 N.E.2d 372, 374 (1999).

"Involuntary admission procedures represent the legislature's attempt to balance the individual's interest in liberty against society's dual interests in protecting itself from dangerous mentally ill persons and caring for those who are unable to care for themselves. [Citation.] The Code's procedural safeguards are not mere technicalities. [Citation.] Rather, they are essential tools to safeguard the liberty interests of respondents in mental health cases. [Citation.] Because involuntary admission proceedings pose a grave threat to an individual's liberty interests, the Code's procedural safeguards should be 
strictly construed
 in favor of the respondent. [Citation.]"  In re 
Rovelstad
, 281 Ill. App. 3d 956, 964-65, 667 N.E.2d 720, 725 (1996).  

George O. contends that the circuit court's order finding him subject to involuntary admission must be reversed because the State (1) failed to comply with section 3–602 when the first certificate required by this section did not state his name, that he was subject to involuntary commitment, and that he required immediate hospitalization; (2) failed to show that he had been examined by a psychiatrist within 24 hours after admission as required by section 3–610; and (3) failed to prove by clear and convincing evidence that he was subject to involuntary admission.

The State conversely maintains that (1) the circuit court's order was proper, as clear and convincing evidence established by Dr. Attaluri's testimony showed that George O. was subject to involuntary admission because he suffered from a severe mental illness and, due to his past abuse of alcohol, depression, suicidal ideations, access to firearms and marital difficulties, he was reasonably expected to inflict serious harm on himself or another in the near future; (2) George O. waived his right to appeal any procedural deficiencies when he failed to preserve the issue in the circuit court; and (3), in the alternative, the circuit court had jurisdiction and any procedural deficiency did not prejudice George O. and was, therefore, harmless.

 Section 3–602 of Article VI, governing emergency admissions by certification under the Mental Health and Developmental Disabilities Code,
 provides:

"The petition shall be accompanied by a certificate executed by a physician, qualified examiner, or clinical psychologist which states that the respondent is subject to involuntary admission and requires immediate hospitalization.  The certificate shall indicate that the physician, qualified examiner, or clinical psychologist personally examined the respondent not more that 72 hours prior to admission.  It shall also contain the physician's, qualified examiner's, or clinical psychologist's clinical observations, other factual information relied upon in reaching a diagnosis, and a statement as to whether the respondent was advised of his rights under Section 3–208."  405 ILCS 5/3–602 (West 1992).

Section 3–604 states:

"No person detained for examination under this Article on the basis of a petition alone may be held for more than 24 hours unless within that period a certificate is furnished to or by the mental health facility.  If no certificate is furnished, the respondent shall be released forthwith."  405 ILCS 5/3–604 (West 1992).

Further, section 3–610 prescribes:

"As soon as possible but not later than 24 hours, excluding Saturdays, Sundays and holidays, after admission of a respondent pursuant to this Article, the respondent shall be examined by a psychiatrist.  The psychiatrist may be a member of the staff of the facility but shall not be the person who executed the first certificate.  If the respondent is not examined or if the psychiatrist does not execute a certificate pursuant to Section 3–602, the respondent shall be released forthwith."  405 ILCS 5/3–610 (West 1992).

Last, we note section 3–611, which states:

"Within 24 hours, excluding Saturdays, Sundays and holidays, after the respondent's admission under this Article, the facility director of the facility shall file 2 copies of the petition, the first certificate, and proof of service of the petition and statement of rights upon the respondent with the court in the county in which the facility is located.  Upon completion of the second certificate, the facility director shall promptly file it with the court.  The facility director shall make copies of the certificates available to the attorneys for the parties upon request.  Upon the filing of the petition and first certificate, the court shall set a hearing to be held within 5 days, excluding Saturdays, Sundays and holidays, after receipt of the petition.  The court shall direct that notice of the time and place of the hearing be served upon the respondent, his responsible relatives, and the persons entitled to receive a copy of the petition pursuant to Section 3–609."  405 ILCS 5/3–611 (West 1992).

In the instant case, the first certificate signed by Dr. Johnston and required by section 3–602 did not include George O.'s name and failed to state that he was subject to involuntary admission and required immediate hospitalization.  Accordingly, we conclude that section 3–602, which, when strictly construed, requires that such a statement be contained within this first certificate, was not satisfied.  In addition, sections 3–602 and 3–611, strictly construed, require the first certificate to be filed with the petition, while section 3–604 additionally prohibits any person from being detained on the basis of a petition alone beyond 24 hours unless the mental health facility furnishes or is furnished this first certificate.  Although the petition was timely filed in La Salle County, the record shows that this first certificate required by section 3–602 was filed after the cause was transferred to Peoria County -- more than 24 hours after the respondent was admitted.  When such certificate is not furnished within 24 hours after admission, the respondent "shall be released forthwith."  405 ILCS 5/3–604 (West 1992).

Section 3–610 requires that a psychiatrist must examine the respondent no later than 24 hours after he is admitted.  405 ILCS 5/3–610 (West 1992).  The psychiatrist who conducts this examination must execute a certificate similar to that required by section 3–602 and may not be the same individual who executed the first certificate.  Again, we note that the record only shows that the first and second certificates were filed when the cause was transferred to Peoria County.  Since the cause was not transferred by 4 a.m. on February 25 -- within 24 hours after George O.'s admission -- but at 3:24 p.m. on February 25, we likewise conclude that the second certificate was not properly filed as section 3–610, strictly construed, required.

Additionally, with regard to the section 3–610 mandatory requirement that the second certificate be executed by a psychiatrist, the State concedes that the record does not identify Dr. Hinshaw as a psychiatrist but argues that it is reasonable to presume he is a psychiatrist since he is a medical doctor who practices at the mental health facility.  Courts should not engage in speculation to reach such a presumption.  See 
Rovelstad
, 281 Ill. App. 3d at 965, 667 N.E.2d at 725.  The record at bar does not provide us with enough information to conclude with certainty that  Dr. Hinshaw was a psychiatrist.  We, therefore, conclude that the State has not shown that George O. was examined by a psychiatrist within 24 hours of his admission and, thus, George O. should have been "released forthwith."  See 405 ILCS 5/3–610 (West 1992); see 
Rovelstad
, 281 Ill. App. 3d at 965-66, 667 N.E.2d at 726.  Because the State failed to comply with the mandatory requirement of section 3–610, we must reverse the order for involuntary admission.  See 
Rovelstad
, 281 Ill. App. 3d at 965-66, 667 N.E.2d at 726.  "Any noncompliance with the statutory prescribed involuntary commitment procedures renders the judgment entered in such a cause erroneous and of no effect."  
People v. Valentine
, 201 Ill. App. 3d 10, 13-

14, 558 N.E.2d 807, 810 (1990); see also 
In re Elkow
, 167 Ill. App. 3d 187, 193, 521 N.E.2d 290, 294 (1988).    

We further reject the State's argument that George O. has waived this error by failing to raise an objection in the circuit court.  " '[E]rrors demonstrating noncompliance with the statutory provisions that appear on the face of the record may render a judgment erroneous even if not raised at trial; furthermore, such errors may be considered on appeal under a doctrine analogous to plain error.' "  
Rovelstad
, 281 Ill. App. 3d at 966, 667 N.E.2d at 726, quoting 
In re Martens
, 269 Ill. App. 3d 324, 327 (1995).  We, therefore, decline to apply waiver in this case, since the State's failure to comply with section 3–610 appears on the face of the record and clearly prejudiced George O.  In light of these conclusions, we need not address George O.'s other contentions.

CONCLUSION

In sum, the State's noncompliance with the statutorily prescribed involuntary commitment procedures renders the circuit court's judgment erroneous.  We, therefore, reverse.

Reversed.

SLATER, P.J., and HOLDRIDGE, J., concur.