NO. 4-06-0263     Filed: 11/20/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: SHIRLEY M., a Person Found | ) | Appeal from |
| Subject to Involuntary Admission, | ) | Circuit Court of |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Sangamon County |
|      Petitioner-Appellee, | ) | No. 06MH106 |
|      v. | ) | |
| SHIRLEY M., | ) | Honorable |
|      Respondent-Appellant. | ) | George H. Ray, |
| | ) | Judge Presiding. |

_____

JUSTICE COOK delivered the opinion of the court:

On February 24, 2006, respondent, Shirley M., was found to be a person subject to involuntary admission.  Respondent was ordered hospitalized for no more than 90 days.  Respondent appeals.  We affirm.  We note this court recently reached a different result, on somewhat different facts, in In re Sharon L.N., No. 4-06-0045 (November 20, 2006), ___ Ill. App. 3d ___, ___ N.E.2d ___.

I. BACKGROUND

On February 24, 2006, the trial court held an emergency involuntary-admission hearing for respondent.  At the hearing, the court noted that respondent was not present and that respondent refused to speak with her attorney or attend the hearing.

Greg Donathan, a social worker assigned to respondent, testified that he discussed the involuntary-admission hearing

with respondent. Donathan explained to respondent that she was going to have a hearing regarding whether she would stay or leave the facility. Donathan told respondent that the attorney who would represent her wished to speak with her. Respondent stated that she does not know the attorney and would not speak with him. Respondent refused to go into the lobby to speak with her attorney. Donathan explained that only staff are allowed past the lobby at the facility.

Respondent's appointed public defender, William Conroy, argued that respondent's attendance at the hearing was required under section 3-806 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3-806 (West 2004)). Further, Conroy argued that under section 3-805 of the Code (405 ILCS 5/3-805 (West 2004)), he should be allowed to confer with his client. Conroy claimed that he could not waive respondent's presence without speaking to her. Conroy moved to dismiss the case unless the trial court ordered respondent to appear, ordered the facility to allow him to speak to respondent in her room, or reasonably accommodated respondent by going to the residential hall.

Dr. James Myers testified that he attempted to interview respondent for the hearing but she refused to speak with him. Dr. Myers stated that he believed ordering the facility to bring respondent to the hearing against her will could be harmful

to her physically and/or emotionally.  The trial court found respondent's presence waived and proceeded with the hearing on the petition for involuntary admission.

After Conroy stipulated to Dr. Myers' qualifications as an expert in the field of licensed clinical psychology, Dr. Myers testified that he had only known respondent for one day.  Dr. Myers attempted to examine respondent the day before the hearing to determine her eligibility for involuntary hospitalization.  Because respondent was uncooperative and did not want to speak with Dr. Myers, Dr. Myers was unable to inform respondent of the purpose of the examination and of her rights regarding the interview.  Dr. Myers observed respondent in her bedroom and noted that she was still in her pajamas in the afternoon and appeared disheveled.  Respondent looked, though, like she had been bathing and eating.  Based on reviewing her records and in his professional opinion, Dr. Myers determined that respondent was able, with prompts and direction, to meet her basic physical needs in a structured supervised environment.  If respondent were discharged, though, she would not be able to meet her basic needs without substantial help.  Specifically, respondent would likely not take her medication.  Dr. Myers relied on the fact that respondent has had multiple hospitalizations during the last six months, with the last one being a two-week hospitalization two months prior to this hearing.  Other than respondent's physical

appearance, Dr. Myers witnessed no other outward signs of mental illness. As a member of the treatment teams of all of the units in the hospital, Dr. Myers was on respondent's treatment team.

Dr. Myers diagnosed respondent with bipolar disorder and stated that, because of this mental illness, respondent is unable to provide for her basic physical needs so as to guard herself from serious harm. Dr. Myers further opined that the least-restrictive treatment plan for respondent would be an initial period of commitment for 90 days. The comprehensive physical, psychiatric, and social investigation, outlining respondent's physical examination, psychiatric evaluation, social investigation, and treatment plan, was admitted into evidence.

The trial court found that respondent was subject to involuntary admission for at least 90 days and that involuntary admission is the least-restrictive alternative. This appeal followed.

## II. ANALYSIS

Respondent argues that her procedural due process rights were violated when the involuntary-admission hearing was held without her presence and without her having consulted with her attorney. Further, respondent claims that the State failed to prove by clear and convincing evidence that involuntary admission was warranted.

### A. Procedural Due-Process Violation

We review de novo the issue of whether respondent's procedural due process rights were violated as the allegations involve only questions of law.  In re George O., 314 Ill. App. 3d 1044, 1046, 734 N.E.2d 13, 15 (2000).

### 1. Section 3-805

Respondent first points to that fact that she did not confer with counsel before the involuntary-admission hearing. Section 3-805 of the Code provides that those subject to involuntary admissions are entitled to be represented by counsel and counsel shall be allowed time for adequate preparation and shall not be prevented from conferring with his client at reasonable times.  405 ILCS 5/3-805 (West 2004).

In this case, respondent argues Conroy was prevented from conferring with her in violation of section 3-805 of the Code.  Respondent argues section 3-805 of the Code required that Conroy be allowed further into the facility to speak with respondent after she refused to go into the lobby to speak with Conroy. Respondent, though, mischaracterizes the testimony at the hearing.  According to Donathan's testimony, respondent refused to speak with Conroy outright.  She did not simply refuse to go to the lobby.  The testimony indicates that even if Conroy had been allowed further into the facility, respondent would have continued to refuse to speak with him.  Conroy was not prevented from conferring with his client by the facility.  Section 3-805 of the

Code was not violated.

Respondent, though, cites In re Barbara H., 183 Ill. 2d 482, 702 N.E.2d 555 (1998), to support her position. In Barbara H., the respondent was appointed a public defender. At the hearing on her involuntary admission, the public defender informed the trial court that the respondent told him that she had other representation, that the public defender does not represent her, and that she would not go to the hearing. Barbara H., 183 Ill. 2d at 494, 702 N.E.2d at 561. Instead of determining who actually represented the respondent, the court stated that the public defender's office had been assigned and asked the public defender if he waived the respondent's presence at the hearing. Barbara H., 183 Ill. 2d at 494-95, 702 N.E.2d at 561. The public defender waived the respondent's presence.

The Illinois Supreme Court held that the respondent was entitled to representation of her choice and that the attorney the respondent explicitly rejected could not waive her presence at the hearing. Barbara H., 183 Ill. 2d at 495-96, 702 N.E.2d at 561. The supreme court stated that when the trial court was informed that the respondent had secured alternative representation and rejected the public defender's representation, the court should have first determined who represented the respondent before holding the hearing.

In this case, respondent did not reject Conroy's

representation in favor of a different attorney.  Respondent simply stated she did not want to speak to Conroy under any circumstances and did not want to attend the hearing under any circumstances.

## 2. Section 3-806

Respondent also points to section 3-806 of the Code, which mandates a respondent's attendance at an involuntary-admission hearing unless the respondent's attorney waives her appearance and the trial court is satisfied by a clear showing that the respondent's attendance would subject her to substantial risk of serious physical or emotional harm.  405 ILCS 5/3-806(a) (West 2004).  At the respondent's attorney's request, the court shall make reasonable accommodation concerning the location of the hearing, and if the respondent's attorney advises the court of respondent's refusal to attend the hearing, the hearing may proceed in her absence.  405 ILCS 5/3-806(b) (West 2004).

In this case, Conroy refused to waive respondent's presence at the hearing because he had not had a chance to speak with respondent.  Dr. Myers testified that forcing respondent to attend the hearing would subject her to risk of physical or emotional harm.  The trial court was informed at the beginning of the hearing that respondent refused to come to the hearing. Donathan's testimony indicated that respondent refused to attend the hearing no matter where the hearing was held.  Respondent

- 7 -

simply did not wish to participate in her hearing in any way and was not prevented from participating. The court was permitted under section 3-806(b) to hold the hearing in respondent's absence after the testimony showed that respondent refused to attend the hearing no matter the location or circumstances and forcing her to attend could harm her.

### 3. Section 3-807

Respondent argues section 3-807 of the Code was also violated. Under section 3-807, in order to involuntarily admit someone, at least one psychiatrist, clinical social worker, or clinical psychologist who has examined the person subject to the involuntary admission must testify at the hearing. 405 ILCS 5/3-807 (West 2004). If such a qualified witness's testimony is not presented, the State cannot meet its burden.

Respondent cites In re Michelle J., 209 Ill. 2d 428, 808 N.E.2d 987 (2004), to support her argument that no qualified witness testified at her hearing because Dr. Myers did not personally examine her. In Michelle J., the supreme court held that the involuntary admission of Sam S. could not be sustained because the requirements of section 3-807 were not satisfied. The testifying psychologist was not able to examine Sam S. personally because he was restrained and not in a position to be interviewed when her schedule allowed. "It was not because he was incapable of being interviewed prior to the hearing."

Michelle J., 209 Ill. 2d at 436, 808 N.E.2d at 991.  In fact, three other workers were able to examine Sam S. prior to the hearing.  They were apparently not called because of administrative convenience; the testifying psychologist worked in the county where the hearing was held, the others did not.  "Under these circumstances, there is no legitimate basis for deviating from section 3-807's explicit requirements."  Michelle J., 209 Ill. 2d at 436, 808 N.E.2d at 991.

Michelle J.'s case involved different circumstances.  The testifying psychologist was unable to interview Michelle the day before the hearing because Michelle did not appear capable of making "'an informed decision on whether or not to waive her rights.'"  Michelle J., 209 Ill. 2d at 433, 808 N.E.2d at 989.  "Unlike the expert in Sam's case, however, [the testifying psychologist] was directly involved in the respondent's care."  Michelle J., 209 Ill. 2d at 439, 808 N.E.2d at 993.  She served as a consultant to Michelle's treatment team and was able to meet with Michelle personally in a group session, apparently within 72 hours of the hearing.  Accordingly, the supreme court could not say the requirements of section 3-807 were not satisfied.  Michelle J., 209 Ill. 2d at 439, 808 N.E.2d at 993.

As to Sam S., the supreme court refused to read its previous decision, in Barbara H., "to permit recognition of an exception to the personal[-]examination requirement based on the

expert's inability to conduct a personal interview." Michelle J., 209 Ill. 2d at 436, 808 N.E.2d at 991. The court also noted that in any event such an exception would be inapplicable to Sam S.'s situation. Sam S. was capable of being interviewed prior to the hearing. Michelle J., 209 Ill. 2d at 436, 808 N.E.2d at 991. Although not detailed in Barbara H., the reason the expert there was unable to conduct a personal interview was that the respondent refused to talk to the expert. Michelle J., 209 Ill. 2d at 435, 808 N.E.2d at 991. Justice Thomas, specially concurring, questioned the holding in Barbara H.: "Is the majority holding that a respondent can avoid involuntary commitment simply by refusing to speak with the doctor assigned to examine him or her?" Michelle J., 209 Ill. 2d at 441, 808 N.E.2d at 994 (Thomas, J., specially concurring). Justice Thomas also noted that the testifying doctor in Barbara H. had personally treated the respondent for six months. Justice Thomas questioned the majority's reliance on the fact that Michelle J.'s personal interview occurred within 72 hours of the hearing: "[H]ow can we write a 72-hour time limit into the statute?" Michelle J., 209 Ill. 2d at 442, 808 N.E.2d at 995 (Thomas, J., specially concurring).

It is not clear what the rule would be if the respondent simply refused to speak with the doctor assigned to examine him or her. That situation was not presented in Michelle J.,

where Sam S. was not incapable of being interviewed prior to the hearing, and workers who had personally interviewed Sam S. prior to the hearing were not called purely because of "administrative convenience." Nor was refusal to speak the focus of In re Barbara H., where that fact was not even mentioned in the opinion. It seems likely that in a case where the respondent simply refused to speak to the testifying worker, the court would follow Justice Thomas's special concurrence.

In this case, Dr. Myers falls between the two witnesses in Michelle J.. Like the two witnesses, Dr. Myers did not personally examine respondent. Unlike the unqualified witness, though, Dr. Myers did work at the facility where respondent was held and no testimony suggested that other potentially qualified witnesses were able to interview respondent before the hearing. Like the qualified witness, Dr. Myers was a member of respondent's treatment team, he was able to personally observe her, and he was able to review her records.

Because Dr. Myers attempted to interview respondent and respondent refused to be interviewed by anyone for the hearing, Dr. Myers was a member of respondent's treatment team, Dr. Myers personally observed respondent, and Dr. Myers reviewed respondent's records, we find that the requirements of section 3-807 were met.

Because respondent was afforded all of the procedural

safeguards contemplated by the statute, respondent's due-process rights were not violated.

B. Clear and Convincing Evidence of Involuntary Admission

A person may be involuntarily admitted if it is established by clear and convincing evidence (405 ILCS 5/3-808 (West 2004)) that the person has a mental illness and "because of his or her illness is unable to provide for his or her basic physical needs so as to guard himself or herself from serious harm" (405 ILCS 5/1-119(2) (West 2004)). The standard of review for an involuntary-commitment proceeding is whether the judgment is against the manifest weight of the evidence. In re Knapp, 231 Ill. App. 3d 917, 919, 596 N.E.2d 1171, 1172 (1992). The trial court's decision is given great deference, and absent a showing that it is against the manifest weight of the evidence, it "'will not be set aside at the appellate level, even if the reviewing court, after applying the clear[-]and[-]convincing standard, would have ruled differently.'" In re Bennett, 251 Ill. App. 3d 887, 888, 623 N.E.2d 942, 944 (1993), quoting In re Orr, 176 Ill. App. 3d 498, 505, 531 N.E.2d 64, 69 (1988).

The trial court's finding that respondent was mentally ill is not in dispute. Dr. Myers' testimony that respondent was suffering from the mental illness bipolar disorder was consistent with respondent's treating physician's diagnosis. On appeal, respondent does not dispute that she was suffering from this

- 12 -

mental illness.  Respondent claims, though, that the State did not prove that her mental illness rendered her incapable of providing for her own basic needs.

In determining whether respondent's mental illness renders her incapable to provide for her basic physical needs, this court has held that a court should consider whether that person "(1) can obtain her own food, shelter, or necessary medical care; (2) has a place to live or a family to assist her; (3) is able to function in society; and (4) has an understanding of money or a concern for money as a means of sustenance."  In re Jakush, 311 Ill. App. 3d 940, 944, 725 N.E.2d 785, 788 (2000).  Because the trial court is in a superior position to determine witness credibility and to weigh evidence, we give great deference to the trial court's findings.  Knapp, 231 Ill. App. 3d at 919, 596 N.E.2d at 1172.  The court does not have to wait until respondent hurts herself or someone else before involuntarily committing her.  In re Manis, 213 Ill. App. 3d 1075, 1077, 572 N.E.2d 1213, 1214 (1991).

In this case, Dr. Myers testified that respondent could only meet her basic physical needs in a structured, supervised environment where she would receive substantial help.  "Expert opinion regarding mental illness and inability to guard oneself from harm must be in the form of explicit medical testimony, based upon a clear and convincing factual basis."  Bennett, 251

- 13 -

Ill. App. 3d at 888, 623 N.E.2d at 943. While Dr. Myers was not able to interview respondent, he was able to review her records. Respondent's comprehensive psychiatric evaluation, authored by Dr. G. Midathala, showed that respondent had multiple hospitalizations in the past six months. Further, last summer, respondent had a serious overdose that resulted in hospitalization in the intensive-care unit. The incident that prompted the most recent hospitalization was a call from respondent to the sheriff's department reporting that there were "midgets" at her home and that they needed to be killed. Respondent believed that her son was in danger from the "midgets." Respondent reported that her son cared for her, but she filed a report stating her son has been abusive to her. Sometime before this incident, respondent took her son's car in the middle of the night without permission. Respondent was eventually found at her daughter's home, beating on the door and claiming her daughter was dead. Respondent reported that she does not take her medication because they "crippled her." Dr. Midathala noted that the community reported that respondent does not bathe for days and always looks disheveled and unkempt. Based on his review of the reports, Dr. Myers opined to a reasonable degree of psychiatric certainty that, because of respondent's bipolar disorder, she was unable to provide for her basic physical needs so as to prevent her from harm. Based on Dr. Myers' testimony, the trial court's finding

that respondent was subject to involuntary admission for no more than 90 days was not against the manifest weight of the evidence.

Respondent argues, though, that the State presented insufficient evidence to show that involuntary admission was the least-restrictive alternative. Dr. Myers' treatment plan was admitted into evidence. The plan outlined the incident that led to respondent's current hospitalization and stated that the hospital's staff reported that respondent has become more impulsive, more dangerous, and more erratic. The plan stated that respondent's symptoms of mental illness have become exacerbated to the extent that they are interfering with her ability to remain appropriate in a community setting as evidenced by her bizarre behavior and delusional statements. Based on the information in the treatment plan and Dr. Myers' opinion that involuntary admission was the least-restrictive alternative, the trial court's finding that respondent is a person who is mentally ill and who because of her illness is unable to provide for her basic physical needs so as to guard herself from serious harm is not against the manifest weight of the evidence.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

STEIGMANN, J., concurs.

- 15 -

KNECHT, J., dissents.




JUSTICE KNECHT, dissenting:

Shirley M. was absent from the hearing where the trial court approved her involuntary admission.  The lawyer who represented her at the hearing never saw or spoke to her.  A clinical psychologist testified it would be harmful to order the facility to bring Shirley M. to the hearing against her will.  The same clinical psychologist diagnosed her and opined as to her need for involuntary treatment even though he did not examine her, inform her of the purpose of the examination, or inform her as to her rights.

The majority concludes Shirley M. was uncooperative, refused to attend the hearing, refused to see or talk to her attorney, did not want to speak to the clinical psychologist, and was afforded all the procedural safeguards afforded by the statute.  I disagree.

Shirley M. cannot thwart the court process by refusing to cooperate, but the State cannot prevail by presenting scant evidence of her lack of cooperation and making no effort to accommodate her right to counsel.  No evidence supports the

clinical psychologist's opinion it would be harmful to require her to attend the hearing against her will.  Her attorney asked to be allowed to see and speak with his client in her room or within her residential hall.  The facility, the prosecutor, and the trial court made no effort to accommodate her right to counsel.  The clinical psychologist's single failed attempt to examine or interview Shirley M. and advise her of her rights does not constitute a good-faith effort to comply with the statute.

Shirley M.'s liberty was at stake.  The right to counsel is fundamental.  Her lack of cooperation does not trump her right to due process or the responsibility of those who seek to confine her to make a reasonable and measured effort to accommodate that right.  I would reverse.