2021 IL App (1st) 200048-U

SIXTH DIVISION
August 6, 2021

No. 1-20-0048

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | 16 CR 07398 |
| | ) | |
| MARY COOK-WILLIAMS, | ) | Honorable Erica Reddick, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Justice Oden Johnson concurred in the judgment.
Presiding Justice Mikva dissented.

**ORDER**

*Held:* Defendant was not denied the right to be present at her involuntary admission hearing where she refused to attend the hearing; and the trial court's finding that defendant was unable to care for her basic physical needs and was therefore subject to involuntary admission was not against the manifest weight of the evidence; affirmed.

¶ 1    Defendant, Mary Cook-Williams, was charged with six counts of aggravated battery following an incident with an Amtrak officer. Defendant was found unfit to stand trial and was remanded to the Illinois Department of Human Services for treatment. A discharge hearing was held a year later, whereupon defendant was again found unfit to stand trial and was remanded to

treatment for an extended term. When the extended term expired, the trial court ordered defendant to be placed in a secure setting for seven years which was the maximum sentence that she would have faced. On appeal, defendant contends that: 1) the trial court committed manifest error when it involuntarily admitted her to the Illinois Department of Human Services because there was no evidence that she would inflict serious physical harm upon herself or others; and 2) she was deprived of her right to be present at her involuntary admission hearing. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3      Charges were filed against defendant after an event that occurred on April 27, 2016, wherein defendant struck the victim, Amtrak Officer Carlos Juarez. Defendant did not appear for her first arraignment date in May 2016, so a no-bail warrant was issued for her arrest. She was eventually arrested and her arraignment was held on October 11, 2016. The court appointed her an assistant public defender and postponed the arraignment until defendant could undergo an examination through the Forensic Clinical Services of the Circuit Court of Cook County to determine if she was fit to stand trial. The order was based on defendant's "erratic behavior before in court."

¶ 4      On March 21, 2017, a status hearing was held on the fitness results. Defendant refused to come out of the holding area, so the court waived her appearance. Defense counsel requested time to review the fitness report and the court continued the case.

¶ 5      On April 17, 2017, a fitness hearing was held. The trial court again waived defendant's appearance after defense counsel informed the court that she refused to enter the courtroom. Defense counsel told the court that she had told defendant the hearing would proceed without her.

¶ 6       Dr. Nicholas Jasinski testified that he had interviewed defendant twice and she exhibited significant symptoms of mental illness, but she refused to sign for records from Cermak Health Services, so Dr. Jasinski was unable to see what was going on in the jail. Dr. Jasinski ultimately diagnosed defendant with "unspecified schizophrenia spectrum or other psychotic disorder." He found her unfit to stand trial. Dr. Jasinski also testified that Dr. Melanie Venable, a Forensic Services psychiatrist, interviewed defendant in March 2017, and made the same finding. The trial court found defendant unfit to stand trial and she was remanded to the Illinois Department of Human Services on an inpatient basis. The trial court requested that the Department provide an opinion in 30 days as to whether defendant could likely attain fitness within a year, along with a treatment plan within 90 days.

¶ 7       On March 8, 2018, the trial court ordered a re-evaluation for fitness and an order for evaluation of sanity. On July 10, 2018, the trial court held another fitness hearing where defendant was present. Dr. Fidel Echevarria from Forensic Services testified and the trial court once again found that defendant remained unfit to stand trial.

¶ 8       On August 16, 2018, a discharge hearing was held. Defendant was present at the hearing. The victim testified as to the events of the day in question. The trial court found sufficient evidence to establish guilt beyond a reasonable doubt that defendant committed bodily harm against the victim while the victim was performing his official duties. The trial court ordered that defendant remain in treatment on an inpatient basis. Defendant was remanded to the Illinois Department of Human Services.

¶ 9       Subsequently, several status hearings on reports of defendant's treatment plan and her fitness status took place, and on three occasions defense counsel either asked the trial court to waive defendant's presence or the trial court waived her presence on its own.

3

¶ 10     Defendant was present for the status hearing held on November 4, 2019. The State informed the court that the court liaison "attempted to have the defendant transported last week" for an evaluation, but she "refused to be transported for the interview." The State indicated:

"If we cannot get [defendant] to the 10th floor, we would need to bring in someone from Elgin Mental Health Center to testify that would probably be a treating physician who would then be taken away from an entire day of treating patients *** that day trying to testify, hence the reason we were trying to get [defendant] to the 10th floor for an evaluation where someone here would be able to testify before the Court with regard to appropriateness of whether or not she should be committed for further treatment."

¶ 11     The trial court then informed defendant that "you're going to come back in front of this court on November 13. And between this day and the next court date, by working with your lawyer, hopefully you will be able to get the evaluation." Defendant responded that she refused treatment at Elgin Treatment Center, where she was being held.

¶ 12     On November 13, 2019, a hearing was held to determine whether defendant was subject to involuntary admission to the Illinois Department of Human Services for further treatment. The State informed the trial court that the court liaison had indicated that defendant refused to get on the bus to go to court that day. Defense counsel objected to the hearing being held without defendant present. The trial court then held a hearing on whether defendant's absence was willful.

¶ 13     The prosecutor informed the trial court that she had the opportunity to speak to the "doctor who's present here today who will be testifying and to Georgia McKinzie over at Elgin Treatment Center, the court liaison," and both indicated that defendant refused to get on the bus

to be transported to court. The prosecutor stated that she had received an email the day before stating that defendant was going to refuse to get on the bus. Defense counsel stated that she had received the same email from McKinzie, the court liaison, stating that defendant refused to get on the bus, but argued that defendant had not indicated to her that she was not coming to court, and that it would be improper to go forward without defendant present.

¶ 14    The trial court ultimately found that defendant waived her appearance by refusing to attend court, based on the fact that she had been at the previous court date at which the trial court had told defendant she had to be present at the commitment hearing. The trial court noted that defendant was "sufficiently alert to the circumstances, the reasons that she was in court, and the proceedings," and that she did "respond appropriately." The trial court did not have concerns that she did not understand the purpose of the proceedings and the need for her to return. The court noted that while defendant had not directly communicated with defense counsel, "her behavior her actions taken together with how she comported herself in court on the last court date and certain clear statements she did make about these proceedings and the nature of them, I think the Court is well able to gauge that [defendant] has chosen not to be present as part of these proceedings and that is corroborated by" the State and the court liaison. The court found that defendant "made the decision to absent herself from the proceedings" and allowed them to continue without her.

¶ 15    The involuntary submission hearing then took place. Dr. Richard Malis, an Elgin Treatment Center psychiatrist, testified that he had been treating defendant since August 1, 2019, and that he was responsible for her treatment team. Dr. Malis testified that defendant's diagnosis was schizoaffective disorder, bipolar type. Dr. Malis recommended medications, individual therapy, and group therapy, all of which defendant was refusing. Dr. Malis testified that

defendant consistently refused to have conversations with her social worker, and "avoids contact with staff or other patients for the most part." He stated that "[a]ny attempts that I've made to meet with her she refuses to meet with me." Defendant would not consent to medication orders except for a sleep aid. Dr. Malis was unable to determine if defendant understood the nature of the proceedings against her and the roles of the people in the court process because she had not fully cooperated with a full evaluation. He was unable to comment on whether defendant was paranoid about defense counsel because defendant consistently refused to come to court. Dr. Malis opined that defendant was unfit to stand trial.

¶ 16    Dr. Malis further opined that defendant had not been a danger to herself or others in the hospital setting, but that out in the community she could be a danger to others. He stated that defendant had been unable to assist him in coming up with an aftercare plan and she had been in and out of hospitals and jail. Dr. Malis opined that she would be unable to care for herself out in the community. Specifically, she had concerns about food being poisoned and allergens. She needed to be supervised or she would not eat. She also refused to cooperate with the social worker to continue Medicaid benefits, so her benefits lapsed. Dr. Malis stated that defendant would have a difficult time maintaining her basic needs of housing, food, and medical care. He opined that she remained unfit to stand trial even after an extended period of treatment.

¶ 17    The trial court asked Dr. Malis about other family members, to which he answered that he had not been able to identify any family members or other people who could provide support to defendant. The State then rested. Defense counsel did not put forth any witnesses. After closing arguments, the trial court stated:

> "[Defendant]'s unable to care for herself as needed under the [section 104-
> 25(g)(2)] portion of the statute.

6

\*\*\*

The Court has considered the evidence, and I have only detailed highlights of it,
not all of it. Has carefully considered the evidence. The Court has further
considered the statutory provisions. It is the finding of the Court that defendant
does remain in need of care for the reason that she does not appear to be able to
care for herself outside of the structured setting that has been provided.

The Court does clearly acknowledge that her continuing failure to
cooperate may ultimately thwart the effort for her to be able to be in a condition
where extended treatment or additional treatment will no longer be necessary, but
I address the evidence as it exists at this time and based on what is before the
court."

¶ 18    The trial court remanded defendant to the Illinois Department of Human Services for
treatment. The court ordered defendant to be placed in a secure setting for seven years, which
was the maximum sentence she would have faced. Defendant now appeals.

¶ 19                                   II. ANALYSIS

¶ 20    On appeal, defendant contends that: 1) the trial court erred in involuntarily committing
her where no evidence was presented that she posed a "serious threat to herself or others," and 2)
she was deprived of her right to be present at her involuntary admission hearing.

¶ 21    For context, we note that pursuant to section 104-25(d) of the Code of Criminal
Procedure of 1963 (Criminal Code) (725 ILCS 5/104-25(d) (West 2018)), if a section 104-25(a)
discharge hearing does not result in the acquittal of the charge, the defendant may be remanded
for further treatment and the one-year time limit shall be extended to 15 months for a Class 2
felony, which is what happened here. At the expiration of the extended period of treatment,

section 104-25(g)(2) of the Criminal Code applies, which states that, if a defendant continues to be unfit to stand trial, the trial court shall determine whether she "is subject to involuntary admission under the Mental Health and Developmental Disabilities Code" (Mental Health Code) (405 ILCS 5/1-100 *et seq*. (West 2018)) or constitutes a "serious threat to the public safety." 725 ILCS 5/104-25(g)(2) (West 2018)).

¶ 22                    A. Right to be Present at Hearing

¶ 23    We first address defendant's contention that she was deprived of her right to be present at her section 104-25(g)(2) involuntary admission hearing, because if we find that she was deprived of this right, then we need not address her contention that the trial court's finding at the hearing was against the manifest weight of the evidence. Defendant argues that she was deprived of her right to be present at her involuntary admission hearing where: 1) she was not admonished that a trial or hearing could proceed in her absence; 2) she did not willfully absent herself from the proceedings; 3) her attorney did not waive her appearance; and 4) she did not advise her attorney that she was refusing to attend the proceeding. The State responds that defendant was not deprived of her right to be present at her involuntary admission hearing where she refused to attend the hearing. We agree with the State.

¶ 24    Initially, defendant contends, relying on *People v. Williams*, 312 Ill. App. 3d 232 (2000), that the right to be present at one's discharge hearing is akin to the right to be present at one's trial, and therefore "one must be admonished of the risk of willfully absenting oneself from the discharge hearing." Defendant cites to section 113-4(e) of the Criminal Code, which requires a court to advise a defendant who pleads not guilty that a failure to appear would constitute a waiver of his rights to confront the witnesses against him and the trial court may proceed in his absence. 725 ILCS 5/113-4(e) (West 2018).

¶ 25 First, we note that defendant did not "plead not guilty," and therefore section 113-4(e) of the Criminal Code does not apply here. Second, an involuntary admission hearing under section 104-25(g)(2) of the Criminal Code is not a discharge hearing under section 104-25(a) of the Criminal Code. Rather, the purpose of a section 104(g)(2) involuntary admission hearing is "to review defendant's treatment plan and to determine whether [the defendant is] 'subject to involuntary admission.' " *People v. Olsson*, 2015 IL App (2d) 140955, ¶ 23. Third, the defendant in *Williams* was denied the opportunity to be present at a discharge hearing, which did not happen in this case. 312 Ill. App. 3d at 235. Here, defendant attended her discharge hearing and had every opportunity to be present at her involuntary admission hearing but refused to attend as discussed further below. And fourth, *Williams* did not discuss admonishments. *Id.* Accordingly, we find both section 113-4(e) of the Code and *Williams* to be inapplicable to the case at bar, and find no error in the trial court's failure to admonish defendant that the involuntary admission hearing could proceed in her absence.

¶ 26 However, pursuant to the Mental Health Code, there is no question that defendant had the right to be present at her involuntary admission hearing. Section 3-806 of the Mental Health Code states:

> "(a) The respondent shall be present at any hearing held under this Act unless his attorney waives his right to be present and the court is satisfied by a clear showing that the respondent's attendance would subject him to substantial risk of serious physical or emotional harm.
>
> (b) The court shall make reasonable accommodation of any request by the recipient's attorney concerning the location of the hearing. If the recipient's

attorney advises the court that the recipient refuses to attend, the hearing may

proceed in his or her absence.

(c) No inference may be drawn from the recipient's non-attendance pursuant to

either subsection (a) or (b) of this Section." 405 ILCS 5/3-806 (West 2018).

¶ 27    Accordingly, this section of the Mental Health Code affords a defendant the right to be

present at any proceedings, with two exceptions: 1) defendant's counsel waives his or her

presence and there is a clear showing to the court that the respondent's presence would not

subject her to a "substantial risk of serious physical or emotional harm," or 2) respondent's

attorney informs the court that the respondent refuses to attend the hearing. See *In re Christine*

*R.*, 2019 IL App (3d) 180264, ¶ 19.

¶ 28    Here, defense counsel did not waive defendant's right to be present at the hearing, but

rather defendant refused to attend the hearing. Therefore, our discussion is limited to subsection

(b) of section 3-806 of the Mental Health Code. A finding of substantial risk of harm "is not

required by the text of section 3-806(b)." *Matter of Perona*, 294 Ill. App. 3d 755, 760 (1997).

"Section 3-806(a) demonstrates the legislature knew how to impose a requirement of a finding of

substantial harm and chose not to in cases where the respondent refuses to attend." *Id.*

Accordingly, to the extent that defendant argues on appeal that the trial court was required to

make a "substantial risk of serious harm" finding, we reject that contention and note that we are

only looking at section 3-806(b) in this case.

¶ 29    Turning to the facts of this case, at the beginning of the involuntary admission hearing,

both the prosecution and defense counsel indicated that they had received an email from the

court liaison at Elgin Treatment Center indicating that defendant "refused to get on the bus

today." The State noted that defendant had been present in court on November 4, and that she

had refused to be transported from Elgin Treatment Center to court for an evaluation earlier that week. The State argued that defendant "was admonished on [November 4, 2019] to be – make herself available not only for another evaluation for Forensic Clinical Services, which she did not avail herself of, but that she should be present and be available here for the hearing." Defense counsel argued that while she received the same email as the prosecution, she had not heard personally from defendant and therefore did not think the hearing should proceed without her.

¶ 30    The trial court stated:

"I think the sum of the information before the Court is clear and the actual facts that govern it are not controverted. What is clear is that [defendant] is not present in court today. What is also clear is that on the last court date, she was present in court when this next court date was set.

At the conclusion of that court appearance, there were certain comments [defendant] made with respect to her representation. She actually indicated at the time that she would cooperate with a meeting with the additional evaluation from Forensic Clinical Services. And then, again, as I recall, she did go on to make statements about the ill effects of the treatment she's receiving, including having rashes and itching. And she spoke in more detail about a desire not to have treatment.

But she was present. She was in court and appeared to be sufficiently alert to the circumstances, the reasons that she was in court, and the proceedings. She did respond appropriately, in fact, to certain statements that were made by her attorney as well as the Court during the time. So I do not have concerns that she did not understand the purpose of the proceedings and the need for her return.

Particularly at the end of those proceedings, I do recall the Court admonishing the defense with respect to the time constraints under which we were operating.

My conclusion based on the evidence that has been – or the information referred to by the parties is that the defendant was aware of the – her need to be in court on today's date. Further, the provisions cited by defense certainly allows for the Court to proceed without the physical presence of the defendant under certain circumstances. The Court does find that those circumstances in this case are met.

While [defendant] has not directly communicated with [defense counsel], her attorney, what her wishes are, her behavior, her actions taken together with how she comported herself in court on the last court date and certain clear statements she did make about those proceedings and the nature of them, I think the Court is well able to gauge that [defendant] has chosen not to be present as part of these proceedings and that is corroborated in part by the email [alluded] to by both the State and the defense ***.

So the Court is determining that based on the actions of the defendant and the information surrounding her nonappearance on today's date that she has made the decision to absent herself from the proceedings and I'm going to permit the proceeding to proceed without her physical presence. She is represented by counsel."

¶ 31    Here, defense counsel informed the court that it had received the same email as the State from the court liaison at Elgin Treatment Center indicating that defendant refused to get on the bus to come to court. While defense counsel noted that she did not personally speak to defendant,

12

that is not a requirement of the statute. Rather, the statute states that if the defendant's attorney "advises the court that the [defendant] refuses to attend," the hearing may proceed in her absence. 405 ILCS 5/3-806(b) (West 2018). We find, relying on *In re Shirley M.*, 368 Ill. App. 3d 1187 (2006), that defense counsel's indication to the court that she received an email from the court liaison that defendant refused to get on the bus satisfied section 3-806(b).

¶ 32    In *In re Shirley M.*, the respondent's attorney refused to waive her presence at the involuntary admission hearing because he had not had a chance to speak to the respondent. *Id*. at 1191. The respondent's social worker informed the trial court at the beginning of the hearing that respondent refused to come to the hearing. *Id*. The respondent simply did not wish to participate in her hearing in any way and was not prevented from participating. *Id*. The trial court held the hearing in the respondent's absence, which was held to be proper where the respondent refused to attend the hearing no matter the location or circumstances. *Id*.

¶ 33    As in *In re Shirley M.*, where the statement from the social worker that respondent refused to attend court was found to satisfy section 3-806 of the Mental Health Code, we find that the email from the court liaison indicating that defendant refused to get on the bus satisfies section 3-806 of the Mental Health Code. Defendant had been admonished at the previous court date that she was to attend an evaluation and the next hearing, and she did neither. We find that because defendant refused to attend the hearing, her right to be present at the hearing was not violated.

¶ 34                            B. Involuntary Commitment

¶ 35    Having found that defendant's right to be present at the involuntary admission hearing was not violated by her refusal to attend, we turn to defendant's contention that the trial court's

finding at that hearing that she was subject to involuntary admission was against the manifest weight of the evidence.

¶ 36    We reiterate that at the expiration of the extended 15-month period of treatment, section 104-25(g)(2) of the Criminal Code applies, which states that if a defendant continues to be unfit to stand trial, the trial court shall determine whether she "is subject to involuntary admission under the Mental Health and Developmental Disabilities Code," or constitutes a "serious threat to the public safety." 725 ILCS 5/104-25(g)(2) (West 2018)). Pursuant to section 1-119 of the Mental Health Code, a person subject to involuntary admission on an inpatient basis includes:

> (1) A person with mental illness who because of his or her illness is reasonably expected, unless treated on an inpatient basis, to engage in conduct placing such person or another in physical harm or in reasonable expectation of being physically harmed;
>
> (2) A person with a mental illness who because of his or her illness is unable to provide for his or her basic physical needs so as to guard himself or herself from serious harm without the assistance of family or others, unless treated on an inpatient basis; or
>
> (3) A person with mental illness who:
>
>> (i) Refuses treatment or is not adhering adequately to prescribed treatment;
>>
>> (ii) Because of the nature of his or her illness, is unable to understand his or her need for treatment;
>>
>> (iii) If not treated on an inpatient basis, is reasonably expected, based on his or her behavioral history, to suffer mental or emotional deterioration

and is reasonably expected, after such deterioration, to meet the criteria of either paragraph (1) or paragraph (2) of this section.

In determining whether a person meets the criteria specified in paragraph (1), (2), or (3), the court may consider evidence of the person's repeated past pattern on specific behavior and actions related to the person's illness." 405 ILCS 5/1-119 (West 2018).

¶ 37    Accordingly, "[a] person is subject to involuntary admission under the Code if he or she has a mental illness and because of that illness is either 'reasonably expected to inflict serious physical harm upon himself or herself or another in the near future' or 'unable to provide for his or her basic physical needs so as to guard himself or herself from serious harm.'" *In re Joseph S.*, 339 Ill. App. 3d 599, 606 (2003) (quoting 405 ILCS 5/1-119 (West 2000)). This must be established by testimony of "at least one psychiatrist, clinical social worker, or clinical psychologist" who examined the person (405 ILCS 5/3-807) (West 2018)), and must be proven by clear and convincing evidence (405 ILCS 5/3-808 (West 2018)). In determining whether a person can provide for her basic physical needs, a court considers whether the person can obtain her own food, shelter, and medical care; has a place to live or a family who can assist her; can function in society; and has an understanding of money and concern for it as means of sustenance. *In re Joseph S.*, 339 Ill. App. 3d at 606 (citing *In re Jakush*, 311 Ill. App. 3d 940, 944 (2000)). An order of involuntary admission will not be reversed unless it is against the manifest weight of the evidence. *Id.*

¶ 38    Here, defendant does not take issue with the trial court's finding that she was unable to provide for her basic physical needs. Rather, relying on section 104-25(g)(2)(ii) of the Criminal Code, she contends that the State had to prove that she "posed a serious threat to herself or

others," and that the State failed to present any evidence supporting that proposition. Section 104-25(g)(2)(ii) of the Criminal Code states:

> "The terms 'subject to involuntary admission', 'in need of mental health services in the form of inpatient care' and 'in need of mental health services but not subject to involuntary admission nor inpatient care' shall have the meanings ascribed to them in clause (d)(3) of Section 5-2-4 of the Unified Code of Corrections." 725 ILCS 5/104-25(g)(ii) (West 2018).

¶ 39     The current version of section 5-2-4 of the Unified Code of Corrections states in relevant part:

> "(a-1) Definitions. For purposes of this Section:
>
>> (A) (Blank).
>>
>> (B) 'In need of mental health services on an inpatient basis' means: a defendant who has been found not guilty by reason of insanity but who, due to mental illness, is reasonably expected to inflict serious physical harm upon himself or another and who would benefit from inpatient care or is in need of inpatient care." 730 ILCS 5/5-2-4(a-1) (West 2018).

¶ 40     Based on this definition section, defendant contends that the trial court was required to find that she was "reasonably expected to inflict serious physical harm" upon herself or another before remanding her to the Illinois Department of Human Services. However, section 104-25(g)(2)(ii) of the Code, which refers to the definitions in the Unified Code of Corrections, does not apply to the case at bar. That portion of the statute reads, in context:

> (i)  180 days after a defendant is remanded to the Department of Human Services, under paragraph (2), and every 180 days thereafter for so long as the defendant is

confined under the order entered thereunder, the court shall set a hearing ***. The

court shall make a finding as to whether the defendant is:

> (A) subject to involuntary admission; or

> (B) in need of mental health services in the form of inpatient care; or

> (C) in need of mental health services but not subject to involuntary

> admission nor inpatient care.

The findings of the court shall be established by clear and convincing evidence

and the burden of proof and the burden of going forward with the evidence shall

rest with the State's Attorney. Upon finding by the court, the court shall enter its

findings and an appropriate order.

(ii) The terms 'subject to involuntary admission', 'in need of mental health

services in the form of inpatient care' and 'in need of mental health services but

not subject to involuntary admission nor inpatient care' shall have the meanings

ascribed to them in clause (d)(3) of Section 5-2-4 of the Unified Code of

Corrections." 725 ILCS 5/104-25(g)(2) (West 2018).

¶ 41 As can be seen by reading the subsection 104-25(g)(2)(ii) in context, that subsection refers to the phrases listed in subsection 104-25(g)(2)(i), which applies to the hearing that is to be set 180 days after a defendant is remanded under section 104-25(g)(2). Here, we are reviewing the order that remanded defendant under section 104-25(g)(2), not an order from a hearing that was held 180 days after that initial remandment. Again, section 104-25(g)(2) states that if at the expiration of the extended period of treatment, a defendant continues to be unfit to stand trial, the trial court shall determine whether she "is subject to involuntary admission under the Mental Health and Developmental Disabilities Code" or constitutes a "serious threat to the public

safety." 725 ILCS 5/104-25(g)(2) (West 2018)). Accordingly, the trial court correctly looked to the Mental Health Code when defining a person "subject to involuntary admission." See 405 ILCS 5/1-119(2) (West 2018) (a person with a mental illness who because of his or her illness is unable to provide for her basic physical needs so as to guard herself from serious harm without the assistance of family or others, unless treated on an inpatient basis).

¶ 42    Defendant's reliance on *Barichello v. Campagna*, 305 Ill. App. 3d 13 (1999), does not persuade us otherwise. The timeline of that case is similar to that of this case: the defendant was found unfit to stand trial on charges of murder and the court committed him to custody of the Department of Mental Health and Developmental Disabilities (Department). *Id*. at 15. After a discharge hearing pursuant to section 104-25 of the Code, the circuit court remanded him to the custody of the Department for extended treatment under section 104-25(d) of the Criminal Code. *Id*. At the expiration of the extended treatment period, the circuit court committed defendant to the custody of the Elgin Treatment Center under section 104-25(g)(2) of the Criminal Code. *Id*. at 16. The Department failed to regularly file recommitment proceedings every 180 days as required by section 104(g)(2)(i) of the Criminal Code. *Id*. After the defendant appealed, the appellate court ruled that the Department erred when it failed to regularly file recommitment proceedings and granted the Department leave to file a commitment petition *instanter*. *Id*.

¶ 43    At the recommitment proceeding in *Barichello*, the circuit court found that there was clear and convincing evidence to establish that defendant was subject to involuntary admission. *Id*. at 20. On appeal, the defendant argued that the circuit court applied the wrong standard when it determined that he was subject to involuntary admission. *Id*. at 21. He contended that the court should not have relied on language in section 5-2-4 of the Unified Code of Corrections, but rather should have relied on the standard found in the Mental Health Code (405 ILCS 5/1-119).

18

*Id*. The court on appeal noted that "[i]f the defendant continues to be unfit at the expiration of the extended treatment period, the court must determine whether he is subject to involuntary admission under the Mental Health Code or constitutes a serious threat to public safety." *Id*. (citing 725 ILCS 5/104-25(g)(2) (West 1996)). The court then stated that if so found, the defendant must be remanded to the Department for further treatment, as the defendant was in that case. The court went on:

"Section 104-25(g)(2)(i) further provides that 180 days after a defendant is remanded to the Department, and every 180 days thereafter for as long as the defendant is so confined, the facility director shall file a treatment plan with the circuit court." [Citation] "The court then must conduct a hearing and 'make a finding as to whether defendant is (A) subject to involuntary admission; or (B) in need of mental health services in the form of inpatient care; or (C) in need of mental health services but not subject to involuntary admission nor inpatient care.'" *Id*. at 21-22 (citing 725 ILCS 5/104-25(g)(2)(i) (West 1996)).

¶ 44    The *Barichello* court noted that while the defendant recognized that "section 104-25(g)(2)(ii) states that the standards listed shall have the meanings ascribed in clause (d)(3) of section 5-2-4 of the Unified Code of Corrections," he nevertheless contended that they should not apply. *Id*. at 22. The court rejected the defendant's contention, noting that the definitions found in the Code of Corrections "have been adopted by the legislature to apply to under section 104(g)(2)(i)." We do not contest the holding by the court in *Barichello* that the standards in the Unified Code of Corrections apply under section 104-25(g)(2)(i), at the hearings to be held every 180 days after the initial section 104-25(g)(2) remandment.

¶ 45    In the case at bar, however, we are reviewing the trial court's order of the remandment after a section 104-25(g)(2) involuntary admission hearing, which clearly indicates, as discussed at length above, that if a defendant continues to be unfit at the expiration of the extended treatment period, the court must determine whether she is subject to involuntary admission "under the Mental Health Code" or constitutes a serious threat to public safety. 725 ILCS 5/104-25(g)(2) (West 2018). Accordingly, the trial court correctly relied on sections 104-25(g)(2) of the Criminal Code and 1-119 of the Mental Health Code in deciding whether defendant was subject to involuntary admission. Its finding that defendant was unable to care for her basic physical needs and was therefore subject to involuntary admission was not against the manifest weight of the evidence.

¶ 46                        III. CONCLUSION

¶ 47    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 48    Affirmed.

¶ 49    PRESIDING JUSTICE MIKVA, dissenting:

¶ 50    I agree with the majority that the first issue we must consider is whether the trial court acted properly in proceeding with the involuntary admission in Ms. Cook-Williams's absence. Because I think it was error in this case to have done so, I would remand for another hearing in which Ms. Cook-Williams should be given an opportunity to participate, unless her absence is either properly waived by her attorney or the court is advised by her attorney that she has refused to attend the hearing.

¶ 51    The statutory language is clear: "If *the recipient's attorney* advises the court that the recipient refuses to attend, the hearing may proceed in his or her absence." (Emphasis added.) 405 ILCS 5/3-806(b) (West 2018). The facts in this case are also clear. The prosecutor reported

that a doctor who would be testifying on behalf of the State and the "court liaison" at Elgin Treatment Center had both indicated to her that Ms. Cook-Williams refused to get on the bus. Defense counsel said that she had received the same email that the prosecutor had from the court liaison, but that Ms. Cook-Williams had not indicated to her personally that she was refusing to come to court and that, under these circumstances, it would be improper to proceed with the involuntary admission hearing in Ms. Cook-Williams's absence.

¶ 52    The majority concludes that section 806(b) of the Mental Health Code allowed the court to go forward without Ms. Cook-Williams in this case, where no one who had actually spoken with Ms. Cook-Williams reported to the court that she refused to appear, and her attorney reported that she did not personally speak with her client about not attending and objected to proceeding without her. The court does so in reliance on *In re Shirley M*., 368 Ill. App. 3d 1187 (2006), where, with one justice dissenting, this court held that testimony from the respondent's social worker that the respondent refused to attend the hearing satisfied section 3-806(b). Although I believe the *Shirley* court also failed to comply with the clear statutory language, unlike here, there was at least live testimony in that case from someone whose interests were aligned with those of the respondent on the matter of the respondent's refusal to appear.

¶ 53    Our supreme court has specifically admonished lower courts, in reference to this very statute, that "[b]ecause involuntary administration of mental health services implicates fundamental liberty interests [citation] statutes governing the applicable procedures should be construed narrowly [citation]." *In re Barbara H.*, 183 Ill. 2d 482, 498 (1998). In that case our supreme court affirmed the reversal of an involuntary admission hearing where the patient was not present and neither of the bases in the statute for proceeding without her had been satisfied.

21

¶ 54    The State insists that a "narrow, literal reading of the statute"—*i.e.*, requiring a pronouncement of the defendant's refusal to attend the hearing from the defendant's own attorney—would put the attorney in a "no win" situation, where, if defendant never explicitly told her lawyer that she refused to come, the lawyer could not properly advise the court. Accordingly, the State argues, and the majority in this case agrees, that the trial court should as a practical matter be able to look to other evidence regarding the defendant's unwillingness to come to court.

¶ 55    However, a "narrow, literal" reading of the statute is precisely what our supreme court had mandated. In addition, I see nothing unfair in the trial court tasking the defendant's attorney with determining, in advance of the hearing, whether or not the defendant will appear. The statute makes clear that: "No inference may be drawn from the recipient's non-attendance." 405 ILCS 5/3-806 (c) (West 2018). Thus, there would not appear to be any conflict in an attorney's need to report to the court that their client was refusing to attend. While in this case, that might have necessitated a continuance before the court could proceed with the hearing, that appears to be precisely what the statute requires in the circumstances presented here. Moreover, if the State's scenario of a client refusing to expressly refuse to come to court were to present itself, the statute also provides the alternative of having the lawyer waive the client's presence under subsection (a)—something that is permitted so long as the court is satisfied by a clear showing that the respondent's attendance would subject him to substantial risk of serious physical or emotional harm. 405 ILCS 5/3-806 (a) (West 2018). Thus, I do not see the "no-win" scenario warned of by the State as a likely possibility.

¶ 56    I respectfully dissent.